**Jerry L. LEE, Plaintiff–Appellee,**

v.

**GREAT EMPIRE BROADCASTING, INC., Defendant–Appellant.**

**No. 88CA0853.**

Colorado Court of Appeals, Div. III.

Dec. 7, 1989.*

Rehearing Denied Feb. 1, 1990.

Granted.

Berenbaum & Weinshienk, P.C., Peter R. Bornstein, Denver, for plaintiff-appellee.

Montgomery Little Young Campbell & McGrew, P.C., Kevin J. Kuhn, Craig A. Adams, Englewood, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Great Empire Broadcasting, Inc., appeals from a judgment entered on a verdict in favor of plaintiff, Jerry L. Lee. It asserts that the trial court erred in construing the Colorado wage statute, § 8–4–101, et seq., C.R.S. (1986 Repl.Vol. 3B), to apply to plaintiff's claim and in refusing to instruct the jury upon an employer's right to discharge an employee at will without good cause. We reverse and remand for a new trial.

Plaintiff has considerable experience in radio sales and management. He was hired by defendant's general manager to work in its radio station's sales department. While the agreement itself was oral, the general manager prepared a handwritten internal memorandum summarizing some of its principal terms. This memorandum reflected that plaintiff's employment was to commence on March 27, 1986, and that there was to be a "guarantee [of] $4,500.00 per month through September 1986."

Plaintiff reported to work, but after only a few days defendant terminated his employment, alleging that plaintiff's actions had caused difficulties with the sales manager and other employees. At the time of plaintiff's termination, defendant paid nothing to him for the several days of work he had performed.

Plaintiff then instituted this action for breach of the agreement in which he sought to recover the full amount guaranteed to him (*i.e.*, 6 months × $4,500, or $27,000). In addition, he asked for a penalty of 50% of this amount and attorney fees as provided for by §§ 8–4–104 and 8–4–114, C.R.S. (1986 Repl.Vol. 3B).

In its answer, defendant asserted, among other things, that plaintiff was not entitled to any payment under the employment agreement because he had been terminated properly and that the Colorado wage statute was not applicable to any amounts that plaintiff would have earned under that agreement after the date of his termination. It also contended that plaintiff had failed to mitigate his damages because he did not find other employment after his

termination. Nevertheless, some months after plaintiff instituted his suit, defendant tendered to him a pro-rated amount of the first month's guarantee, plus an additional 50% thereof and interest thereon.

The jury, apparently accepting defendant's assertion that plaintiff had not properly mitigated his damages, returned a verdict in plaintiff's favor for $9,000 (apparently representing 2 months' guarantee). The jury also found that defendant had no "good faith legal justification" for failing to pay this amount to plaintiff. Based on this latter special finding, the court assessed a $4,500 penalty against defendant under § 8–4–104 and awarded attorney fees to plaintiff under § 8–4–114.

## I.

Defendant first contends that any payment that might have become due to plaintiff after he was terminated is not subject to the provisions either of § 8–4–104 or of § 8–4–114. We agree.

These two statutes are a part of a comprehensive wage code that is designed to require employers to make timely payment of wages earned by an employee. *See Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo.1989). That code requires the employer to establish regular pay periods not longer than one month and regular paydays not later than 10 days following the close of the pay period. Section 8–4–105, C.R.S. (1986 Repl.Vol. 3B).

If an employee is terminated by the employer, "the wages or compensation for labor or services *earned and unpaid at the time of such discharge* is due and payable *immediately.*" Section 8–4–104(1), C.R.S. (1986 Repl.Vol. 3B) (emphasis supplied). If an employee voluntarily quits his employment, such wages or compensation become due and payable on the next regular pay day. Section 8–4–104(1). If there exists a dispute over the amount due, the employer is obligated to pay to the employee all amounts which he concedes to be due, and the employee's acceptance of such sum will not prejudice any claim for additional amounts. Section 8–4–110, C.R.S. (1986 Repl.Vol. 3B).

If an employer fails to pay wages due to an employee within the time set by statute for such payment, without a "good faith legal justification" for such non-payment, he becomes liable to the employee for a statutory penalty equal to 50% of the wages due. Section 8–4–104(3), C.R.S. (1986 Repl.Vol. 3B). And, if it becomes necessary for an employee to institute suit to recover either the wages due or this statutory penalty, the "winning party" in such an action is entitled to recover reasonable attorney fees from the other party. Section 8–4–114.

■■■■ Under these statutory provisions, the propriety of an employee's discharge is irrelevant. An employer who fails to pay an employee the wages earned by him as of the time of his discharge is liable under the statute, even if the employer had the absolute right to discharge him. Conversely, even though an employee's discharge may constitute a violation of contract (or other legal wrong) by the employer, the wage statute is not applicable to the circumstance if the employer pays all wages earned by the employee as of the time of his discharge. *See Quinn v. T.M. Sayman Products Co.*, 296 S.W. 198 (Mo.App.1927) (construing a similar Missouri statute).

The wage statute applies only to those wages and compensation that are "earned and unpaid" at the time of the employee's discharge. Section 8–4–104(1). It does not require the payment of compensation "not yet fully earned" under the employment agreement. Section 8–4–104(2).

Nevertheless, the statute has been held to apply to payments becoming due after the date of the discharge, provided those future payments have been "earned," *i.e.*, they are "vested and determinable," at the time of the employee's termination. In such circumstances, the future payment must be made immediately upon becoming due or the employer becomes liable for the statutory penalty under § 8–4–104(3). *Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186 (Colo.App.1988) (bonus based upon period prior to termination, but payable several months thereafter); *Hofer v. Polly*

*Little Realtors, Inc.,* 37 Colo.App. 86, 543 P.2d 114 (1975) (commission resulting from realty contract signed before termination when closing of transaction occurred after that date). *See also Hartman v. Freedman,* 197 Colo. 275, 591 P.2d 1318 (1979) (pay for earned vacation not taken).

■ Here, defendant ultimately tendered to plaintiff the portion of the guarantee that was attributable to the few days' work that he performed, as well as the statutory penalty and interest thereon. Since evidence of this tender was placed before the jury, the verdict presumably was for a portion of the monthly guarantees that would have accrued to plaintiff had his employment been continued during the six months following his termination. But, by its terms, the statute is inapplicable to these payments because they had not been fully earned and they were not vested or determinable as of the date of his discharge.

■ Plaintiff testified that, while he recognized that he would not have become entitled to the full guarantee without performing services for the full term, he said that, because defendant prevented him from performing such service, he considered the guarantee to be fully payable. However, since plaintiff lodged no objection when the issue of his alleged failure to mitigate damages was submitted to the jury, he thereby admitted, at least by implication, that the amounts he sought to recover from defendant were attributable to a period subsequent to his termination and that his right thereto, rather than being fully vested at the time of his discharge, was dependent upon his future actions. *Cf. Cherry v. A–P–A Sports, Inc.,* 662 P.2d 200 (Colo.App.1983).

Thus, even if we assume that plaintiff has a legitimate claim for the full amount of future payments called for by the agreement, such a claim would not be one arising under the wage statute; it would be a common law claim for breach of contract. *See Quinn v. T.M. Sayman Products Co., supra* (statute does not apply in case of a "failure to pay the wages which [the employee] would have earned had he been permitted to continue in the service to the end of the definite period of time for which he was employed").

Nor is the decision in *Kennedy v. Leo Payne Broadcasting,* 648 P.2d 673 (Colo. App.1982) inconsistent with this conclusion. In that case, the agreement pursuant to which the guarantee was payable had expired before the employee was discharged. The employee there had earned all of the guarantee called for by that agreement as of the date of his termination; hence, the amount of the guarantee was fully vested and determinable as of that time.

Further, to the extent that any dictum in *Hofer v. Polly Little Realtors, Inc., supra,* may be said to be inconsistent with our conclusion here, we decline to follow that dictum.

Hence, because the wage statute does not apply to the amount awarded plaintiff by the jury, the trial court erred in awarding to plaintiff the statutory penalty and attorney fees.

## II.

■ Defendant also argues that the trial court erroneously refused to allow the jury to determine whether the parties' agreement created an employment relationship for a definite term, rather than an employment at will relationship, and, in either event, whether defendant properly terminated that agreement and the resulting relationship. We also agree with this contention.

The parties' agreement, and particularly its reference to a "guarantee [of] $4,500 per month through September 1986," can bear either of two possible interpretations.

It can be construed as providing a guarantee of *employment* to plaintiff through September 1986, thereby creating an employment relationship for a definite term and preventing defendant from terminating that relationship at an earlier date except for conduct on behalf of plaintiff constituting good cause for discharge. *See Saxonia Mining & Reduction Co. v. Cook,* 7 Colo. 569, 4 P. 1111 (1884); *Pittman v. Larson Distributing Co.,* 724 P.2d 1379 (Colo.App.1986).

On the other hand, an agreement to pay an employee a certain sum during a particular period of time does not necessarily constitute an agreement that the employment relationship is to continue for that period. *See Justice v. Stanley Aviation Corp.*, 35 Colo.App. 1, 530 P.2d 984 (1974). Thus, the guarantee provision here could be construed as not changing what otherwise would have been an employment at will relationship, but merely as establishing plaintiff's rate of compensation so long as that relationship continued. And, if the employment relationship was one that was to last merely at the will of the parties, then that relationship could have been terminated by defendant at any time, with or without cause. *See Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988); *Continental Airlines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987).

However, if defendant properly terminated the relationship, whether it was one at will or for a definite term, its obligation to pay the remaining portion of the guarantee to plaintiff was also terminated.

Because the agreement was oral, it was necessary for the jury to determine what terms the parties included within that agreement. To this end, the court admitted evidence upon the meaning that custom and usage in the radio industry placed upon the word "guarantee" when used in an employment agreement. At least one witness testified that the term did not include a guaranteed period of employment, but merely a guaranteed level of compensation during that employment.

Under this record, then, the meaning which the parties placed upon the word "guarantee" was a factual issue that was required to be resolved by the jury. *See Pittman v. Larson Distributing Co.*, *supra* (what parties intended by use of term "permanent" was question for jury).

The court properly instructed the jurors as to the principles that they should apply in determining whether the parties had reached *any* agreement. However, it failed to require the jury to determine whether any resulting contract created an at will employment relationship or one for a definite term. And, it failed to instruct the jury that, in order to recover from defendant, it was necessary for plaintiff to prove that defendant had breached the agreement by improperly terminating it.

Defendant requested that the court give a series of instructions that would have informed the jury of the parties' rights and obligations if the jurors found that the employment relationship was one at will or, in the alternative, if it was one for a definite term. While we do not address the issue whether all of these instructions properly stated the legal principles to which they refer, we conclude that their tender sufficiently informed the trial court of defendant's position so as to "trigger" that court's duty to give proper instructions upon those principles. *See Short v. Kinkade*, 685 P.2d 210 (Colo.App.1983).

The trial court's refusal to instruct upon these principles left the jury without any standards against which to judge certain of defendant's defenses and, hence, constituted prejudicial error. *See Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977).

## III.

██ As we have noted, the undisputed evidence was that, prior to trial, defendant tendered to plaintiff a pro-rated portion of the first month's guarantee, based on the amount of time plaintiff worked before his termination, plus a pro-rated penalty and interest. Plaintiff did not contest the accuracy of the figures used to compute the amount tendered, but this sum did not include any amount for attorney fees.

The amount earned by plaintiff before his discharge was due and payable upon his termination and, therefore, was subject to the wage statute. By failing to pay this sum to plaintiff at the time of his termination, defendant became liable to him for the statutory penalty under § 8-4-104, C.R.S. (1986 Repl.Vol. 3B). In addition, since it was necessary for plaintiff to institute suit to collect this amount, defendant was liable to pay to him a reasonable attor-

ney fee under § 8–4–114, C.R.S. (1986 Repl. Vol. 3B).

Hence, upon remand, the trial court shall determine and assess a reasonable attorney fee attributable to plaintiff's efforts to collect the sum owing to him upon his termination. *See Overland Development Co. v. Marston Slopes Development Co.,* 773 P.2d 1112 (Colo.App.1989).

The judgment is reversed, and the cause is remanded to the trial court for a new trial upon plaintiff's breach of contract claim and for other proceedings consistent with the views expressed in this opinion.

STERNBERG and MARQUEZ, JJ., concur.