1999 ME 138

Greg **BURKE**

v.

**PORT RESORT REALTY CORPORATION.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 15, 1999.

Decided Sept. 27, 1999.

Jens–Peter W. Bergen, Kennebunk, for the plaintiff.

Alan E. Shepard, Bruce M. Read, Hodsdon, Read & Shepard, Kennebunk, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1]   Port Resort Realty Corp. appeals from the judgment entered in the Superior Court (York County, *Humphrey, J.*) in favor of Greg Burke.   The court ruled that Port Resort: (1) breached its employment agreement with Burke;  (2) violated 26 M.R.S.A. § 626 (Supp.1998);  and (3) was subject to the statutory damages and forfeitures authorized by 26 M.R.S.A. §§ 626 & 626–A (Supp.1998).   Port Resort contends that the court erred in: (1) finding that Burke made a demand for payment that satisfied section 626;  (2) finding that Burke did not refuse the payment offered by Port Resort;  and (3) imposing statutory penalties.   Finding no error in the well reasoned opinion of the trial court, we affirm.

## I.  CASE HISTORY

[¶ 2]   We previously visited the issues in this case when, on Burke's appeal, we vacated a summary judgment that had been entered by the court (*Fritzsche, J.*) declining to find a violation of 26 M.R.S.A. § 626.  *See Burke v. Port Resort Realty Corp.*, 1998 ME 193, 714 A.2d 837.

[¶ 3]   After trial on remand the court (*Humphrey, J.*) found the facts, which were largely undisputed, as follows:

Defendant, Port Resort Realty Corp. ("Port Resort"), was the operator of a business known as The Shawmut Inn.

Defendant, Ralph Bruno ("Bruno"), was the president of Port Resort.

In October 1994, Plaintiff ("Burke") was hired by Port Resort as general manager and director of marketing and sales. Burke entered into a written employment agreement with Port Resort which was subsequently modified by a written addendum. The agreement as amended provided for Burke to receive a 1% commission based on revenue received from all groups visiting The Shawmut Inn and a 3% commission based on revenue received from those groups for which Burke was the sales person responsible for the account. The amended agreement addressed the payment of Burke's commissions upon the cessation of his employment with Port Resort, stating:

> It should be noted that should Greg [Burke] be laid off or terminated for any reason, with or without reasonable cause, all group commissions for business "on the books" going forward is to be estimated and paid upon departure. Otherwise, all group commissions are to be paid in full the pay period following payment in full by the group.

On November 17, 1995, Burke submitted his resignation, effective December 2, 1995. At the time of his resignation, Burke met with Bruno in the latter's capacity as president of Port Resort and demanded an immediate lump sum payment reflecting commissions for groups booked for dates subsequent to the date of his resignation, and the cash value of the three weeks vacation to which he claimed he was entitled. Bruno refused Burke's demand and said that Port Resort would follow the employment agreement and pay Burke as income from the booked events was realized. Bruno also

said that Port Resort would pay Burke $\frac{1}{12}$ of the cash value of his vacation time because Burke had only worked one month into his second year at the Inn.

At a subsequent meeting between Burke and Bruno on December 2, 1995, Burke demanded that Port Resort pay him $\frac{1}{12}$ of the cash value of his vacation time as Bruno had previously said was due. However, Burke continued his demand for a lump sum payment of commission monies owed him. No payment was made at that meeting.

Burke had no other discussions with Bruno. At trial, Burke testified that he then assumed Port Resort would send incremental commission checks in the manner described by Bruno and further testified that he would have accepted any such incremental payments. However, he never communicated this sentiment to Bruno. Rather, on December 13, 1995, Burke's attorney sent a letter to Bruno reciting Burke's initial demand that Port Resort make an immediate lump sum payment for commissions and three weeks vacation.

On December 14, 1995, Port Resort sent Burke a check for $62.29 and, on December 20, 1995, sent him another check for $17.17. Consistent with his trial testimony, Burke kept both checks.[1] Aside from these two payments totalling $79.46, Burke has not been paid for commissions due him from events at The Shawmut Inn from 1995 through 1996 or for unused vacation pay due him.

[¶ 4] The parties have stipulated that the outstanding amount owed Burke is $8,911.24, including $8,680.76 in commissions and $230.48 in vacation time.[2]

[¶ 5] Port Resort contended in the 1998 trial and contends here that Burke had failed to make a proper demand for pay-

---

1. At the hearing after remand, Burke testified that he had not yet cashed the two checks and still had possession of them. He indicated that he was merely waiting for other larger commission checks in order to cash them all at once.

2. That these sums are owed has not been disputed at least since the court (*Studstrup, J.*) entered judgment for this amount on December 11, 1997.

ment of his commissions and that, by accepting but not cashing two checks totalling $79.46, he had refused to accept a tender of wages, thus exonerating Port Resort from any violation of 26 M.R.S.A. § 626 (Supp.1998).[3]

[¶ 6] On the demand and refusal issues, the trial court ruled as follows:

The first question then is whether Burke's demand for wages, incorrect as to the amount and the timing of payment, vitiates Port Resort's obligation to pay in accordance with the terms of the contract. If § 626 is to have any vitality, the answer must be in the negative. It seems unreasonable and wrong to conclude that a mistaken demand by an employee, who usually does not have ready access to his own wage records, particularly at the time his employment is terminated, could free an employer, who does have ready access to those records, from paying wages in the timely manner required by the law.

The next question is whether on this record it can be concluded that Burke refused to accept a tender of wages by Port Resort or so clearly and resolutely expressed an unwillingness to accept a tender as to constitute some sort of anti-

cipatory refusal, thereby relieving the employer from making incremental payments and exonerating it from any violation of 26 M.R.S.A. § 626. Again, the answer is in the negative. Although Burks clearly made demands upon Port Resort which did not conform to his entitlements under the employment agreement, he did not refuse, either in words or in action, to accept any tender by his employer that did conform. To the contrary, he accepted and retained the two modest checks totalling $79.46.

The court therefore concluded that by failing to continue to make payments to Burke, Port Resort was liable under sections 626 and 626–A.

[¶ 7] The court entered judgment in favor of Burke and against Port Resort on the breach of contract and section 626 claims. It ordered Port Resort to: (1) pay Burke $8,911.24 in damages plus lawful interest and the costs of the action for breaching the employment contract; (2) pay Burke $17,822.48 plus interest at a rate equal to the statutory post-judgment rate and $10,704.06 in attorney fees for violating section 626; and (3) pay a forfeiture of $200 as required by section 626–A[4]

---

3. Section 626 states, in pertinent part:

**Title 26 M.R.S.A. § 626 (Supp.1998)** provides:

An employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid, provided that any overcompensation may be withheld if authorized under section 635 and any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by the employee. Whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment has the same status as wages earned.

For purposes of this section, the term "employee" means any person who performs services for another in return for compensation, but does not include an independent contractor.

For purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2

weeks after the day on which the demand is made.

26 M.R.S.A. § 626 (Supp.1998).

4. 26 M.R.S.A. § 626–A (Supp.1998) provides:

**§ 626–A. Penalties**

Whoever violates any of the provisions of section 621 to 623 or section 626, 628, 629 or 629–B is subject to a forfeiture of not less than $100 nor more than $500 for each violation.

Any employer is liable to the employee or employees for the amount of unpaid wages and health benefits. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages or health benefits under this subchapter, such judgment includes, in addition to the unpaid wages or health benefits adjudged to be due, a reasonable rate of interest, costs of suit including a reasonable attorney's fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages.

The action for unpaid wages or health benefits may be brought by either the affect-

for violating section 626. The court also entered judgment for Port Resort on quantum meruit and unjust enrichment claims. From the judgment, Port Resort filed this appeal.

## II. DEMAND

■ [¶ 8] When construing a statute, we seek to give effect to the legislative intent by examining the plain meaning of the statutory language. *See Estate of Whittier,* 681 A.2d 1, 2 (Me.1996). If the plain meaning of the text does not resolve an interpretative issue raised, then we consider the statute's history, underlying policy, and other extrinsic factors to ascertain legislative intent. *See Arsenault v. Crossman,* 1997 ME 92, ¶ 7, 696 A.2d 418, 421.

■ [¶ 9] It would be inconsistent with the language and the protective purpose of section 626 to hold that an employer is excused from its requirements when an employee does not make an error-free demand for payment. Section 626 provides that "[a]n employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid ...." 26 M.R.S.A. § 626. Section 626 does not define "demand," nor does it specify that the demand must be for the proper amount or made at a particular time. The purpose of section 626 is to "provide a broad guarantee of prompt payment of wages to all employees on termination." *Community Telecomms. Corp. v. Loughran,* 651 A.2d 373, 376 (Me.1994); *see also* L.D. 547, Statement of Fact (115th Legis.1991); *Purdy v. Community Telecomms. Corp.,* 663 A.2d 25, 28 (Me.1995); Emmanuel S. Tipon, Annotation, *Validity, Construction, and Effect of State Laws Requiring Payment of Wages on Resignation of Employee Immediately or Within*

*Specified Period,* 11 A.L.R. 5th 715, 732 (1993).

[¶ 10] Here, there is no dispute that Burke met with Bruno on December 2 and demanded payment and that he, through his lawyer, sent a letter on December 13 reiterating his demand. Port Resort does not dispute that it owed Burke commissions and vacation pay.

■ [¶ 11] Burke made a sufficient demand for payment by satisfying the only requirements detailed by section 626—(1) he made a demand; (2) at the place specified by the statute. Port Resort cannot seriously dispute that it was on notice, soon after Burke's termination, that he wanted to be paid his contractual commissions and vacation time. The trial court did not err in finding that Burke satisfied the demand requirement of section 626.

## III. ACCEPTANCE OR REFUSAL OF TENDER

■ [¶ 12] Port Resort argues that Burke refused its tender of payment by failing to deposit or negotiate the two commission checks that he received. The trial court concluded that:

Although Burke clearly made demands upon Port Resort which did not conform to his entitlements under the employment agreement, he did not refuse, either in words or action, to accept any tender by his employer that did conform. To the contrary, he accepted and retained the two modest checks totaling $79.46.

We review factual determinations for clear error. *See White v. Zela,* 1997 ME 8, ¶ 3, 687 A.2d 645, 646. Whether a tender of payment has been refused is a question of fact. *See E.S. Herrick Co. v. Maine Wild Blueberry Co.,* 670 A.2d 944, 946 (Me.1996)

---

ed employee or employees or by the Department of Labor. The Department of Labor is further authorized to supervise the payment of the judgment, collect the judgment on behalf of the employee or employees and collect fines incurred through violation of

this subchapter. When the Department of Labor brings an action for unpaid wages or health benefits, this action and an action to collect a civil forfeiture may both be joined in the same proceeding.

(holding that whether an accord and satisfaction exists is a question of fact); *Williams v. Ubaldo*, 670 A.2d 913, 916 (Me.1996) (holding that whether a waiver has occurred is a question of fact).

[¶ 13] Section 626 does not indicate whether an employer is relieved from its obligation to pay an employee leaving employment, if that employee rejects an offer of tender. We need not decide that issue of law in this case, however, because the trial court found acceptance, not rejection, of tender and Port Resort has not demonstrated that the finding is clearly erroneous.[5]

■ [¶ 14] Port Resort presented no evidence showing that Burke refused to accept the payments that it offered. Burke had not deposited or cashed the checks at the time that he filed suit against Port Resort, and the checks were still valid at that time. In addition, Burke did not return the checks to Port Resort or indicate in any other way that he was refusing to accept this tender. Rather, he refused to surrender the checks, retaining them without expressing dissent or condition. Moreover, his dispute over the total amount of wages owed is not evidence that he rejected tender of the undisputed portion of the wages. The trial court did not err in finding that Burke did not refuse to accept a tender of wages by Port Resort.

## IV. STATUTORY PENALTIES

[¶ 15] Port Resort contends that the trial court erred in imposing penalties. According to Port Resort, it was involved in a good faith dispute with Burke, thus it did not have to pay Burke pending a resolution and did not violate section 626.

■ [¶ 16] Unlike similar statutes in some other jurisdictions, section 626 does not have a "bona fide dispute" exception. *See, e.g.,* Colo.Rev.Stat. § 8–4–104 (1994); La.Rev.Stat. Ann. §§ 23:631, 632 (1998); Neb.Rev.Stat. §§ 48–1231, 1232 (1998). Section 626 requires an employer to pay at least the undisputed wages owed regardless of whether the parties dispute the exact amount of wages owed. *See* 26 M.R.S.A. § 626.

[¶ 17] Courts in jurisdictions that have such a statutory exception usually have held that employers are required to pay the undisputed wages.[6] Consequently,

---

**5.** On the issue of whether accepting but not cashing a check may be acceptance or refusal as a matter of law, *see Bogosian v. Woloohojian*, 158 F.3d 1, 10 (1st Cir.1998). *Bogosian* addressed, *inter alia,* whether a corporation was entitled to an abatement of interest for checks that were sent to a shareholder through her counsel, but were never cashed or returned and remained in her attorney's possession until they were subpoenaed. The shareholder never informed the corporation that she intended to reject the checks or never cash them. *See Id.* The court concluded that this was not a refusal of tender, finding that "since a valid tender does stop the accrual of interest, it was obviously bad strategy merely to hold the checks failing either to deposit them or to reject the tender (if possible)." *Id.* The court, however, also found that the corporation should have known that Bogosian did not intend to cash the checks when the overdraft protection eventually expired and the checks remained uncashed. Consequently, it limited the abatement of interest to the period between the delivery of the checks and the expiration of overdraft protection. *See id.*

*Bogosian* indicates that since the checks at issue here had not yet expired when this action was commenced, failure to deposit or return them was not a rejection of tender.

Precedents in other jurisdictions indicate that tender is only waived if the tenderee clearly repudiates it by declaration, act, or omission. *See Preload Tech., Inc. v. A.B. & J. Constr. Co., Inc.,* 696 F.2d 1080, 1087 (5th Cir.1983); *Isaacs v. Caterpillar, Inc.,* 765 F.Supp. 1359, 1374 (C.D.Ill.1991); *Modern Aero Sales, Inc. v. Winzen Research, Inc.,* 486 S.W.2d 135 (Tx.Civ.App.1972); *Beeler v. American Trust Co.,* 28 Cal.2d 435, 170 P.2d 439, 441–42 (Ca.1946); RESTATEMENT (SECOND) OF CONTRACTS § 255, cmt. a (1981).

In addition, acceptance can be indicated by refusing to return payment or retaining payment without expressing within a reasonable time any dissent or condition to it. *See McGowin v. Cobb,* 249 Ala. 561, 32 So.2d 36, 38–39 (1947); 86 C.J.S. *Tender* § 44 (1997).

**6.** *See, e.g., Stutes v. Rossclaire Constr., Inc.,* 575 So.2d 466, 470 (La.Ct.App.1991) (holding no good faith dispute existed over whether

neither section 626 nor these cases support Port Resort's contention that it did not violate section 626, when the amount owed is undisputed.

[¶ 18] Port Resort also argues that it did not violate section 626 because the remaining commissions that it owed were not due until after Burke filed the lawsuit. However, an employee who is a victim of ongoing violations need not wait until all possible violations have occurred to file a suit and obtain relief for all violations of a similar nature that do occur.

[¶ 19] Port Resort finally contends that the judgment is not in the "favor of the employee," 26 M.R.S.A. § 626–A, because the trial court found that Port Resort's "characterization of the amount and timing of the payments owed to Burke under the agreement was correct." Port Resort's argument is not convincing. Although the court found that Burke's construction of the employment contract was incorrect, it still found that Port Resort owed Burke the undisputed wages. The judgment, therefore, was in favor of the employee on those counts relating to the section 626 violation. The trial court did not err in imposing statutory penalties pursuant to sections 626 and 626–A on Port Resort.

The entry is:

Judgment affirmed.

employer could not claim right of offset because carpenter was an employee and not an independent contractor); *Lee v. Great Empire Broadcasting, Inc.,* 794 P.2d 1032, 1034 (Colo. Ct.App.1989) (holding that future payment must be made immediately upon becoming due or the employer becomes liable for statutory penalties); *Alexander v. Brown Builders, Inc.,* 490 So.2d 653, 655–56 (La.Ct.App.1986) (holding employer was not engaged in a bona fide wage dispute because it could have easily verified the number of days that the employee worked); *cf. Rohr v. Ted Neiters Motor Co.,* 758 P.2d 186, 189 (Colo.Ct.App.1988) (refus-

ing to assess penalties or attorney fees but awarding wages because a genuine dispute existed as to the amount of bonus); *Landry v. Pauli's, Inc.,* 496 So.2d 431 (La.Ct.App.1986) (awarding wages and attorney fees but not penalties when equitable defense existed and trial court could find that good faith dispute existed regarding owed vacation wages); *Strickland v. American Pitch Pine Export Co.,* 224 La. 949, 71 So.2d 338 (1954) (awarding wages without penalties to employee when employee refused to accept tender by employer of undisputed wages ten days after employee made demand).