2007 VT 46

## Arthur Stowell v. Action Moving & Storage, Inc.

[933 A.2d 1128]

No. 05-532

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Morse, J. (Ret.), Specially Assigned**

Opinion Filed June 1, 2007

Motion for Reargument Denied July 18, 2007.

*Thomas C. Nuovo* of *Bauer, Gravel, Farnham, Nuovo, Parker & Lang*, Burlington, for Plantiff-Appellant.

*Gary W. Lange* of *Swanson & Lange, LLP*, Burlington, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff Arthur Stowell appeals the superior court's order denying penalties and attorney's fees under 21 V.S.A. § 347, claiming his employer, defendant Action Moving & Storage, Inc., improperly withheld commission payments in violation of § 342. We affirm the court's order to the extent it held that commission payments are wages within the meaning of Vermont's wages-and-medium-of-payment law. We reverse the court's order, however, to the extent it held that defendant did not violate § 342 and plaintiff was not entitled to penalties under § 347. We hold that plaintiff is entitled to double damages under § 347 and remand for a determination of costs and attorney's fees pursuant to that statute.

¶ 2. The facts are as follows. Defendant employed plaintiff as a truck driver from January to November 2002. Plaintiff initially performed local hauling jobs, for which he was paid an hourly wage. In April 2002, plaintiff began performing long-haul trucking jobs, for which he was paid by commission, until he voluntarily resigned in November 2002.

¶ 3. In 2002, defendant was an agent of Atlas Van Lines, Inc. ("Atlas"). Atlas divided moving jobs between defendant and other agents and distributed the revenue accordingly. After each move, Atlas provided defendant a moving-distribution sheet showing the amount of money paid each agent for each aspect of the job. Upon receiving the moving-distribution sheet, defendant would determine the commission payment due plaintiff after subtracting advances and other expenses. Defendant completed a driver's commission sheet each week which provided plaintiff with a running total of commission payments, advances, and expenses.

¶ 4. Plaintiff received expense and commission advances of $900 per week[1] and received the balance of the commission for each move about six weeks after the move was completed. Defendant occasionally paid for fuel expenses and Federal Express shipping charges which were deducted from plaintiff's commission payments. Plaintiff was also responsible for damages to the goods he shipped, and defendant held $1,000 of plaintiff's commission aside as a reserve for potential claims. Plaintiff was entitled to the

---

[1] Plaintiff directed defendant to pay $600 of the weekly advances to his partner, Donna Dowdy, because she reportedly assisted him on long-haul trips and because the arrangement would lower his child support obligation. Ms. Dowdy was not a party to this action. The superior court ultimately determined that all wages — advances and commission payments — were plaintiff's for purposes of the suit.

balance of the reserve when the claims period expired. The superior court found the claims period was "several months."[2]

¶ 5. Plaintiff resigned in November 2002, and on December 6, 2002, alleged he was owed additional commission payments. Defendant made payments to plaintiff of $1,094.88 on December 13, 2002, and $800 on January 17, 2003. Plaintiff subsequently claimed he was entitled to further commission payments. After reconciling advances and other payments, defendant claimed it had actually overpaid plaintiff and refused further payments. Plaintiff filed suit on January 23, 2003.

¶ 6. After two days of trial, the superior court found that plaintiff was entitled to $280.24 on a common law breach-of-contract theory. The court first found that defendant's "bookkeeping records . . . [were] wanting to say the least" and that for many of the commission calculations there were no explanations for the figures. It went through an item-by-item analysis of each party's claims and found the net underpayment to be $280.24. The court arrived at this figure by subtracting "pick and hold" charges ($1,015.00), fuel charges ($1,197.25), Federal Express shipping charges ($118.12), and damage claims ($727.67) from the total of all commission payments due plaintiff over the period of his employment. It subtracted from the net total the commission payments and advances actually paid to plaintiff to arrive at the final number. The court concluded that plaintiff's commission payments were wages under 21 V.S.A. § 342, but did not find a violation of that section and refused to assess penalties and attorney's fees for nonpayment as provided in 21 V.S.A. § 347. In response to plaintiff's post-trial motion, the court struck the original judgment of $280.24 and entered judgment for plaintiff in the amount of $2,740.72. The new amount reflected the entire unpaid commission including a part that was to be paid to a third party at plaintiff's direction. The superior court ordered defendant to pay plaintiff this amount, but denied plaintiff's renewed request for penalties and attorney's fees under § 347. Plaintiff appealed.

¶ 7. On appeal, plaintiff claims the court erred in denying penalties under § 347. To resolve this question, we address four issues in turn: (1) whether plaintiff's commission payments were

---

[2] The trial court found that clients could make claims several months after a move was complete. Defendant maintains, as plaintiff confirmed in his deposition, that customers had up to nine months to submit damage claims.

wages under § 342;[3] (2) if so, whether defendant violated § 342 by withholding them; (3) whether plaintiff is entitled to penalties under § 347; and (4) the amount of penalties due.

## I.

■ ¶ 8. This case arises out of Vermont's wages-and-medium-of-payment statutes, see 21 V.S.A. §§ 341-347, the overriding intent of which is to ensure that workers are paid in a timely manner. See *State v. Carpenter*, 138 Vt. 140, 143, 412 A.2d 285, 287 (1980) (explaining intent of § 345 as fostering "regular payment of wages to employees" through penalizing nonpayment); *Zablow v. Dep't of Employment Sec.*, 137 Vt. 8, 9, 398 A.2d 305, 306 (1979) (per curiam) (explaining employer's duty under § 342 to "pay their employees in a timely manner"). As remedial statutes, they must be liberally construed. *Carter v. Fred's Plumbing & Heating, Inc.*, 174 Vt. 572, 574, 816 A.2d 490, 493 (2002) (mem.).

¶ 9. The superior court concluded that plaintiff's commission payments were wages under § 342. The various subsections of that section specify when an employer must pay "the wages earned by such employee." 21 V.S.A. § 342(a). Whether commission payments are wages is a question of statutory interpretation which we review de novo. *Wright v. Bradley*, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893. When interpreting statutes, our goal is to effectuate the intent of the Legislature. *Id.* To do so, we look first to the language of the statute and, if the meaning is clear, enforce the statute according to its terms. *Id.* We consider the "entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." *In re Estate of Cote*, 2004 VT 17, ¶ 10, 176 Vt. 293, 848 A.2d 264.

¶ 10. Although § 342 regulates the payment of wages, the term "wages" is not defined in that statute or in the surrounding ones. The term is defined, however, in other employment-related stat-

---

[3] Plaintiff prevailed on this issue below and argues here that we should affirm the superior court on this point. We address this issue because defendant argues that the ruling was wrong. Defendant can do so, despite failing to file a timely cross-appeal, because if we rule that commission payments are not wages, we would reach the same result as the superior court with respect to plaintiff's appeal issues, but on a different ground. See *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 255-56, 719 A.2d 415, 419 (1998) (explaining how a defendant's arguments could be properly raised on appeal despite its failure to file a cross appeal, because it was aggrieved by errors it alleged only in the event this Court reversed the trial court's judgment in defendant's favor).

utes in the same title. Thus, 21 V.S.A. § 1301(12), which governs unemployment compensation, defines wages as "all remuneration paid for services rendered by an individual, including commissions." The inclusion of commission payments within "wages" is consistent with the traditional use of the word. See Black's Law Dictionary 1610 (8th ed. 2004) ("Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses . . . ." (emphasis added)). Moreover, this Court has broadly defined wages in other contexts to include most forms of compensation for services rendered. *Quinn v. Pate*, 124 Vt. 121, 124, 197 A.2d 795, 797 (1964) (stating that wages are synonymous with earnings and thus are compensation for labor).

¶ 11. In addition, most jurisdictions view commission payments as wages for purposes of wage-payment statutes. This is true of jurisdictions with statutes that define wages to include commission payments. See Ariz. Rev. Stat. Ann. § 23-350(5); Colo. Rev. Stat. § 8-4-101(8)(a)(II); Kan. Stat. Ann. § 44-313(c); Md. Code Ann., Lab. & Empl. § 3-501(c)(2); Minn. Stat. §§ 181.13(b), 181.145; Neb. Rev. Stat. § 48-1229(4). More importantly, it is true of states with statutes, like ours, that do not include a definition of wages. See *Licocci v. Cardinal Assocs.*, 492 N.E.2d 48, 55-56 (Ind. Ct. App. 1986) (noting inclusion of commissions as wages in other chapters of wage-and-hour statutes and citing state workmen's compensation statutes, state employment-security act, and Black's Law Dictionary for support that commissions are wages); *Brown v. Navarre Chevrolet, Inc.*, 610 So. 2d 165, 169-71 (La. Ct. App. 1992) (collecting Louisiana cases defining commissions as wages and stating "[i]t is well settled that the term 'wages' includes commissions and courts have entertained actions for unpaid commissions under the statute."); *Cmty. Telecomm. Corp. v. Loughran*, 651 A.2d 373, 376 (Me. 1994) (holding that inclusion of commissions as wages under statute aligns with protective purpose of the act and "with authority from several other jurisdictions"); see generally S. Samaro, *The Case for Fiduciary Duty as a Restraint on Employer Opportunism under Sales Commission Agreements*, 8 U. Pa. J. Lab. & Emp. L. 441, 447 (2006) (collecting cases and statutes, stating commissions are wages under most wage-payment statutes).

¶ 12. If there is an argument to be made that commission payments were not intended to be wages under § 342, it lies in

the requirements set forth by the statute. Section 342 requires an employer to pay wages to employees "each week . . . the wages earned by such employee to a day not more than six days prior to the date of such payment." 21 V.S.A. § 342(a). On proper notice and consent of the employee, however, it allows an employer to pay "bi-weekly or semi-monthly . . . wages earned by the employee to a day not more than six days prior to the date of the payment." *Id.* § 342(b).[4] Further, an employee who voluntarily leaves must be "paid on the last regular pay day, or if there is no regular pay day, on the following Friday." *Id.* § 342(c)(1). Defendant argues that commission payments cannot be governed by the statute "because [they] are not earned on a temporal basis" and thus cannot be paid according to the statute's requirements. We agree that there are serious questions about how the statute applies to the remuneration scheme used in this case. This does not mean, however, that the Legislature intended no protection for workers who are paid by commission. The coverage of the statute is broad, and it would clearly undermine the legislative intent if an employer could choose a method of payment that left no remedy if the employer failed to pay compensation in a timely fashion. Moreover, there is no difficulty in applying the statute in many situations where an employee is paid by commission — for example, to a retail-sales worker for whom the amount of commission can be determined as soon as a sale is made. Given the wording of our statute and the many decisions from other states construing the term "wages" in the context before us, we hold that commission payments are wages for purposes of our wages-and-medium-of-payment law.

II.

¶ 13. The next issue is whether defendant violated § 342. Here, plaintiff argues that defendant violated § 342(c)(1) by failing to pay him "on the last regular pay day." Defendant responds that it did not violate § 342(c)(1) because the last regular pay day did not occur until after suit was brought.[5] The superior court apparently agreed.

---

[4] Pursuant to a collective bargaining agreement, the payment may be made "to a day not more than 13 days prior to the date of payment." 21 V.S.A. § 342(b).

[5] Defendant's main position in the superior court, and in this Court, is that plaintiff cannot prevail under § 342 because the unpaid commission, if any, was owed to Ms. Dowdy, and not to him. See *supra,* note 1. The superior court originally ruled for defendant with respect to this point, holding that all but $280 was owed to Ms.

¶ 14. Initially, we note that this argument does not fit the facts. This is not a case where plaintiff lost his right to receive his commission once he resigned. It is undisputed that plaintiff was entitled to a commission for long hauls made before he resigned, irrespective of when the calculation of the commission amount was made. Nor is this a case in which plaintiff relies solely on the untimeliness of a commission payment that was eventually made. In this case, defendant decided in January 2003, before plaintiff brought suit, that it had already overpaid him, and refused to pay more. Thus, this is a case of nonpayment, not late payment.

¶ 15. In making this point, we understand that the superior court held that on the day plaintiff brought suit the unpaid commission amount was not due because defendant still had "to account for any potential claims against [plaintiff's] final shipment." The court found that the final accounting did not occur until several months later, and thus defendant had not violated the act when suit was brought. It found both that defendant did not violate § 342 and, in any event, was not liable for penalties under § 347.

¶ 16. We analyze the court's reasoning with respect to § 342 here and will address its § 347 reasoning below. Regarding § 342, we find the court's analysis flawed in a number of respects. By the date of suit, defendant had decided not to make any further commission payments, and the possibility of future damage claims was not the reason for the nonpayment. Further, the court found that the amount of the claims-reserve account was $1,000, and this was below the amount of the unpaid commission.[6] Finally, as discussed below, a violation of § 342 is not necessarily limited to facts in existence at the time the suit is filed — here, for example,

---

Dowdy and not to plaintiff. Thereafter, in response to plaintiff's motion to amend the judgment, the court reversed itself and awarded all damages to plaintiff. Defendant attempted to file a cross-appeal challenging the amendment of the judgment, but the cross-appeal was filed too late, and we dismissed it. As we stated in *supra*, note 3, defendant can urge a different ground of affirmance without a cross-appeal. It cannot, however, urge that we reduce plaintiff's recovery without a cross-appeal. As a result, we do not consider defendant's argument that the court erred in amending the judgment.

[6] This was not true when the court rendered its original decision, but became true when it modified the recovery amount. Plaintiff sought reconsideration of the court's ruling that defendant had not violated § 342, and was not liable under § 347, but the court denied the motion without explanation.

defendant continued to withhold any payment even after it was clear that there were no damage claims.

¶ 17. The central point of the trial court's analysis was that "[defendant] did not owe [plaintiff] any of the remaining commission at the time he filed suit." That conclusion is plainly inconsistent with the court's finding that, other than withholding the damage reserve, defendant would pay the balance of the commission owed "about six weeks after a move was complete," when defendant had all the relevant information from plaintiff and Atlas. Over six weeks had expired before plaintiff brought suit, and it is undisputed that defendant had all the information from which to calculate the remaining commission. Indeed, defendant calculated the remaining commission, and its calculation was close to the amount the court eventually accepted.

■ ¶ 18. Apart from the above analysis, we decline to specify when the statute required defendant to pay the remaining commission. We recognize that defendant has an argument that the statute requires it to make commission payments only when it otherwise would have made them had plaintiff not resigned, and some other courts have accepted this argument in interpreting similar statutory language. See, e.g., *J Squared, Inc. v. Herndon*, 822 N.E.2d 633, 640 (Ind. Ct. App. 2005). Nevertheless, the statute is not entirely clear on this point, and we need not resolve the ambiguity here. Moreover, the situation in this case is exacerbated by both the absence of an agreement specifying how defendant would calculate and distribute plaintiff's commission,[7] and defendant's poor record keeping. In our view, defendant violated § 342(c) under any reasonably possible construction of its terms. It failed to pay any commission on plaintiff's final long-haul job, thereby risking that plaintiff would bring suit, and that the court would not agree with all of its offsets.

### III.

¶ 19. We turn then to the third question: whether plaintiff is entitled to penalties, along with costs and attorney's fees, under § 347 due to defendant's violation of § 342. See 21 V.S.A. § 347

---

[7] The only document representing an employment agreement was a letter submitted at trial which did not specify when commission payments were due; the only sentence pertaining to the issue is: "[defendant] also gave [plaintiff] the breakdown of how we pay drivers for interstate shipments."

(providing penalties for violations of §§ 342, 343). The superior court found that § 347 did not apply, apparently because of the last sentence of the section: "no action may be maintained under this section unless at the time the action is brought the wages remain unpaid or improperly paid." The court held that at the time plaintiff brought suit no wages were unpaid or improperly paid.

■ ■ ¶ 20. We have addressed much of this analysis above under § 342. We here add two points relevant to applying the statutory language to this case. First, we construe the statute in light of the common law and consistent with its evident purpose. See *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995) (stating that statute does not change common law rules unless "the intent to do so [is] . . . expressed in clear and unambiguous language"). Our general rule on damages is that "[t]he right of action being established, damages which have accrued are to be computed to the time of the trial, although accruing after the commencement of the action." *Kerr & Elliott v. Green Mountain Mut. Fire Ins. Co.*, 111 Vt. 502, 517, 18 A.2d 164, 172 (1941). We believe that this rule is fully applicable here and is consistent with the statutory language. As the Supreme Judicial Court of Maine held in response to an argument that an employee must wait to sue until all commission payments are due under the wage-payment statute: "an employee who is a victim of ongoing violations need not wait until all possible violations have occurred to file a suit and obtain relief for all violations of a similar nature that do occur." *Burke v. Port Result Realty Corp.*, 1999 ME 138, ¶ 18, 737 A.2d 1055. The purpose of § 347 is fulfilled if plaintiff has a claim that some wages remain unpaid at the time he brings suit. It is unreasonable and unnecessary to any purpose of the statute to require him to wait to bring suit until all possible damages have accrued.

■ ¶ 21. Second, it is clear that plaintiff had a claim for his unpaid commission when he brought suit, a claim that was validated by the findings of the superior court that defendant owed plaintiff additional commission payments. As discussed above, there was no written employment agreement specifying how each commission was to be paid. In the absence of a written agreement, the superior court had to rely on extrinsic evidence to determine when plaintiff earned his commission. See *Houben v.*

*Telular Corp.*, 231 F.3d 1066, 1072 (7th Cir. 2000) (applying Illinois Wage Payment and Collection Act and stating that in the absence of a written agreement specifying how commission is earned and paid, the court must use extrinsic evidence to find the actual practices used). It found that the practice was to pay a commission, up to the amount of the claims reserve, about six weeks after the long haul was completed. Under that practice, defendant owed plaintiff his commission on the date plaintiff brought suit. See *Lee v. Great Empire Broad., Inc.*, 794 P.2d 1032, 1034 (Colo. Ct. App. 1989) ("In such circumstances, the future payment must be made immediately upon becoming due or the employer becomes liable for the statutory penalty . . . ."). Thus, the action could be "maintained" under § 347 when plaintiff sued.

¶ 22. Beyond the specific issue of compliance with the language of § 347, we note that decisions from other jurisdictions are clear that where a commission is earned before resignation and the employer does not pay the commission when it becomes due, the employer is liable for penalties. See *id.*; *J Squared*, 822 N.E.2d at 639-40; *Admiral Mortgage, Inc. v. Cooper*, 745 A.2d 1026, 1029-30 (Md. 2000). Several state statutes, however, expressly recognize a "good faith" or "bona fide dispute" defense whereby an employer may avoid penalties if it can show that it withheld the payments because of a good-faith dispute. See Ariz. Rev. Stat. Ann. § 23-352(3); Colo. Rev. Stat. § 8-4-110(1); La. Rev. Stat. Ann. §§ 23:631, 23:632; Neb. Rev. Stat. § 48-1232; N.H. Rev. Stat. Ann. § 275:44(IV). Vermont's wage-payment statute does not contain a good-faith exception, 21 V.S.A. §§ 342, 347, and we decline to infer one. *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) ("It is inappropriate to read into a statute something which is not there unless it is *necessary* in order to make the statute effective." (citation omitted)); see also *Burke*, 1999 ME 138, ¶ 16 (declining to read bona fide dispute exception into statute).

¶ 23. Ultimately, defendant argues that it is not liable under § 347 because *Lanphear v. Tognelli*, 157 Vt. 560, 601 A.2d 1384 (1991), holds that § 347 applies only to the nonpayment of wages and not to the underpayment of wages, which defendant asserts occurred here. Defendant misapprehends *Lanphear*. The Court in *Lanphear* held that an employee could not recover penalties under § 347 for an employer's failure to pay the minimum wage in accordance with 21 V.S.A. § 384. *Id.* at 563-64, 601 A.2d at 1386.

*Lanphear* is distinguishable because our ruling as to the inapplicability of § 347 to the underpayment of wages applied only to a violation of the minimum wage statutes, §§ 381-396, and not to violations of the wage-and-medium-of-payment statutes, §§ 341-347. *Id.* at 563-64, 601 A.2d at 1386 ("[T]he penalty provision applies *only to violations of the timeliness and form of wage requirements*, not the underpayment of wages." (emphasis added)); see also *Longariello v. Windham Sw. Supervisory Union*, 165 Vt. 573, 575, 679 A.2d 337, 339 (1996) (mem.) ("Nothing in [*Lanphear*], a case holding that the remedies in § 347 are *inapplicable for violations of minimum wage laws*, suggests that § 347 cannot reach the adverse consequences of uncorrected payment delays." (emphasis added)).

■ ¶ 24. The plain language of § 347 covers any violation of § 342. Since we have held that defendant violated § 342, § 347 necessarily applies.

## IV.

¶ 25. Finally, we address plaintiff's argument that he is entitled to treble damages, plus costs and attorney's fees, under § 347 because the statute awards an employee a penalty amount of twice the unpaid wages in addition to actual damages. Given its holding that plaintiff was not entitled to penalties at all, the superior court did not reach this issue. This is a pure question of statutory construction that we, in any event, review de novo. *In re South Burlington-Shelburne Highway Project*, 174 Vt. 604, 605, 817 A.2d 49, 51 (2002) (mem.). Because the issue is fully briefed, we address it here.

■ ¶ 26. Section 347 states that an employer who violates § 342 or § 343 "shall forfeit to the individual injured twice the value thereof, to be recovered in a civil action, and all costs and reasonable attorney's fees." 21 V.S.A. § 347. The statute is clear that the amount awarded to an employee as a result of a civil action to recover wages is "twice the value thereof"; the statute is silent, however, as to whether this amount includes or is in addition to the employee's actual damages. *Id.* We conclude that the statutory language entitles the employee to double damages, or, put another way, actual damages plus a penalty amount equal to the actual damages. Vermont case law shows that this interpretation is consistent with previous application of the statute. See

*Lanphear*, 157 Vt. at 563-64, 601 A.2d at 1386 (reversing on other grounds court's award of actual damages of $25.00 and § 347 penalties of an additional $25.00).

¶ 27. The statute providing for the investigation of unpaid-wage complaints by the Commissioner of the Department of Labor, 21 V.S.A. § 342a, informs our review. This statute gives the Commissioner authority to "collect from the employer the [unpaid wages] and remit them to the employee." *Id*. § 342a(a). The Commissioner also has authority to collect penalties from an employer in "an additional amount not to exceed twice the amount of the unpaid wages, *one-half of which will be remitted to the employee* and one-half of which shall be retained by the commissioner." *Id*. § 342a(b) (emphasis added). Thus, when the Commissioner enforces the statutory scheme, the employee receives the actual damages in addition to a penalty amount equal to the actual damages, or double damages. We conclude that the Legislature did not intend that employees receive a higher penalty amount when suing on their own. See *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999) (interpreting statute as whole, "looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result"). Therefore, since § 347 is the only provision for an employee to collect actual damages in a civil action under the wage-payment statutes, the employee's penalty award must include the amount of actual damages.

¶ 28. Our conclusion is reenforced by decisions in other jurisdictions interpreting wage-penalty statutes that do not specify whether actual damages are included in the penalty amount. See *State v. Weller*, 152 Vt. 8, 13, 563 A.2d 1318, 1321 (1989) ("Where there are similar statutes in other states, we look for guidance in the interpretations of those statutes."). Two jurisdictions have language that matches Vermont's, language which awards damages for "twice the amount" of the wages and does not specify whether the penalty amount is inclusive of the actual damages. Conn. Gen. Stat. § 31-72 (employee may recover "in a civil action, twice the full amount of such wages"); Wash. Rev. Code § 49.52.070 (employer may be liable to the employee "for twice the amount of the wages unlawfully . . . withheld by way of exemplary damages"). Court decisions in these jurisdictions reveal that damage awards include the actual damages in the penalty award, resulting in double damages, not treble damages. See *Butler v. Hartford Tech.*

*Inst.*, 704 A.2d 222, 224, 230-31 (Conn. 1997) (affirming award of double damages under statute); *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371, 373, 376, 378 (Wash. 1998) (same).

¶ 29. The same is true in states with statutes that award damages in the amount of three times the wages, yet fail to specify whether the penalty is in addition to, or inclusive of, the damages for unpaid wages. See *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 984, 988 (Ariz. Ct. App. 1994) (affirming award of $25,767.15, consisting of $8,589.05 in unpaid wages and $17,178.10 in penalties under statute allowing recovery of "an amount which is treble the amount of the unpaid wages"); *Polk v. Larrabee*, 17 P.3d 247, 251-52, 252 n.1, 259 (Idaho 2000) (affirming award of treble damages, i.e., award of $90,273.66, consisting of $30,091.22 in unpaid wages and $60,182.44 in penalties under statute allowing employee to recover "damages in the amount of three (3) times the unpaid wages found due and owing"); *Stevenson v. Branch Banking & Trust Corp.*, 861 A.2d 735, 757-59 (Md. Ct. Spec. App. 2004) (holding damages are capped at three, not four, times the amount of unpaid wages under statute stating that courts may "award the employee an amount not exceeding 3 times the wage"). These cases show that where a wage-payment statute does not specify whether a penalty is in addition to the amount of unpaid wages, courts typically interpret the penalty amount to include the unpaid wages.

¶ 30. Statutes in other jurisdictions illustrate that when a legislature intends to provide for wage-payment penalties in addition to actual damages, it does so explicitly. See, e.g., Me. Rev. Stat. Ann. tit. § 26 626-A (employee may recover "in addition to the unpaid wages . . . adjudged to be due, [interest], [costs and attorney's fees], *and* an additional amount equal to twice the amount of unpaid wages as liquidated damages." (emphasis added)). Maine's statute uses language similar to Vermont's in that it awards the employee "twice the amount" of the wages, but it also uses language specifying that the damages are "in addition to the unpaid wages." *Id.* Courts have predictably interpreted this to mean that the employee is entitled to, in effect, treble damages. See *Burke*, 1999 ME 138, ¶¶ 7, 19 (affirming award of unpaid wages, penalty amount of twice unpaid wages, costs, and attorney's fees).

¶ 31. These statutes also show the type of language generally employed by a legislature when the penalty award is not intended

to include the amount of the unpaid wages. In fact, other Vermont statutes expressly specify when a penalty award is intended to be in addition to the actual damages. See 9 V.S.A. § 2461(b) ("Any consumer . . . may sue and recover . . . the amount of his damages . . . *and* exemplary damages not exceeding three times the value of the consideration given . . . ." (emphasis added)). Moreover, a review of Vermont statutes reveals that when the Legislature wishes to grant treble damages, as plaintiff urges it did here, it does so explicitly. See 10 V.S.A. § 4709 (treble damages for importation and stocking of wild animals); 12 V.S.A. §§ 4920, 4923 (treble damages for trespass); 13 V.S.A. § 3606 (treble damages for "conversion of trees or defacing marks on logs"); 24 V.S.A. § 3307 (treble damages for interference with water supply); 25 V.S.A. § 207 (treble damages for stopping or conversion of floating lumber); cf. 21 V.S.A. § 347 (damages for "twice the value" of unpaid wages).

¶ 32. Further, this Court has held that an award of treble damages as a penalty includes the amount of the original damages within the penalty. See *State v. Singer*, 2006 VT 46, ¶ 14, 180 Vt. 104, 904 A.2d 1184 (holding proper statutory award of treble damages was three times the amount of actual damages). Thus, a penalty award three times the amount of actual damages — such as the one the plaintiff asks for here — is typically signaled by the term "treble damages" in the statute.

¶ 33. In sum, we conclude that § 347 entitles an employee to double damages. We hold, therefore, that plaintiff is entitled to $5,481.44 in damages, consisting of $2,740.72 in actual damages and a penalty in the same amount. We further conclude that plaintiff is entitled to attorney's fees and costs under the statute and remand so that the superior court may determine those amounts.

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with the views expressed herein.*