**Harold N. PURDY**

v.

**COMMUNITY TELECOMMUNICATIONS CORPORATION.**

Supreme Judicial Court of Maine.

Argued June 5, 1995.
Decided July 31, 1995.

Gordon H.S. Scott (orally), Eaton, Peabody, Bradford & Veague, Augusta, for plaintiff.

Malcolm L. Lyons (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Harold N. Purdy appeals from the judgment entered in Superior Court (Kennebec County, *Mills, J.*) against Community Telecommunications Corporation (CTC) awarding Purdy a portion of his requested commissions and salary and denying his claims for treble damages, interest, and attorney fees. We affirm the judgment in part, vacate in part, and remand for the assessment of treble damages, interest, and attorney fees.

When CTC employed Purdy in 1983 it agreed to pay him a base salary and commis-

sions, payable annually during the first quarter of the succeeding year. In January 1990 Purdy and CTC entered into a new agreement[1] that reduced Purdy's base salary and changed the commissions structure.

Between May 1 and November 1, 1990, Purdy was absent from work. At trial, Purdy and his witnesses characterized this period as a vacation necessitated by his feeling "burnt out, totally burnt out." Purdy claimed that the salary reduction resulted from his intention to take this time off and that he had discussed his plans with Robert Roy, former president of CTC. CTC characterized this period as an unauthorized and unpaid leave of absence.

Approximately two weeks after Purdy's return to work, CTC informed Purdy that it was making the State of Maine account a house account, and thereby denying Purdy commissions on sales of equipment or services to the State of Maine. On November 13, Purdy informed CTC that he intended to resign effective January 1, 1991.

By letter dated March 13, 1991, CTC acknowledged its debt to Purdy in the amount of $33,321.25 and agreed to pay him that amount on his signing a release of all claims against CTC. By letter dated April 1, 1991, Purdy disputed CTC's computations. He indicated that he expected payment of all commissions due to him within two weeks of the date of his letter. CTC responded denying that the employment agreement provided for continuing compensation to an employee while that employee is not performing his or her duties. It further noted that the employment agreement between Purdy and CTC provided that any alteration must be in writing and that no such alteration was made to accommodate Purdy's leave of absence. CTC remained insistent on a release and, at that time, made no offer to pay the undisputed amount. Following commencement of this litigation, CTC tendered a check, which Purdy accepted, in the amount of $25,130.01 [2] representing "all commissions and other compensations that we have determined are due to you related to your employment with Community Telecommunications Corporation prior to your retirement."

## I. *The applicability of 26 M.R.S.A. § 626*

The Superior Court concluded that Purdy was not an employee within the meaning of 26 M.R.S.A. § 626 (1988 and Supp. 1994)[3] because he was not paid on a weekly

---

1. The agreement provided in pertinent part:

   1. The Company and [Purdy] agree that [Purdy] will be employed by the Company on the terms and conditions as set forth below:
   a. Term of Employment: Employment under the terms and conditions of this Agreement begins on January 2, 1990, and continues on an indeterminate basis, subject to the provisions for termination set forth below.
   b. Position and Duties: Vice President—Sales & Marketing reporting directly to the President and responsible for providing advice, consultation and direction in the areas of sales and marketing practices and procedures, distributor/dealer relationships, and other areas affecting the Company's performance in the markets in which it operates. [Purdy] will also continue to sell CPE and Network services.
   c. Compensation: The Company will pay [Purdy] an annual salary of $10,000 as a retainer for his advisory and consultative services. The Company will also pay [Purdy] a commission for merchandise and network services sold and incentive bonus amounts as may be offered from time to time. The specific commission is described in Appendix "A," attached.
   . . .

   2. [Purdy] is bound by normal Company policies and participates in the above and all other Company benefits, as applicable, as outlined in the Employee Handbook. Additionally, [Purdy] is bound by Company policies relating to the terms and conditions of the Company's Agency Agreement with New England Telephone Company.
   3. Without cause, the Company or [Purdy] may terminate this Agreement upon two weeks notice. [Purdy] will continue his duties and be paid his regular compensation up to the date of termination.
   4. This instrument may be altered only by further written agreement between the parties.

   Appendix A provides that Purdy would receive a base commission rate of 8%, a commission of 6.3% on equipment add-ons, and 4% on maintenance agreements.

2. This payment constituted the $33,321.25 debt CTC had previously acknowledged minus applicable taxes and benefits.

3. The statute currently provides:

   An employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where

basis. CTC was a corporation engaged in the sales and service of telephone equipment, a mercantile business and one of the types of employers specified in 26 M.R.S.A. § 621(1). This, not the payment interval, is the controlling factor in determining the applicability of section 626; *See Marston v. Newavom,* 629 A.2d 587, 591 (Me.1993). The trial court's determination that section 626 applied only to weekly earnings is an error of law.

■ CTC suggests we engraft a good faith exception on the statute. Although it contends that the statute was designed to apply to the hourly wage earner, the Legislature has not so limited the remedial effect of section 626 or provided for an exemption for action taken by an employer in good faith. CTC's arguments that the difficulty of the computation of the amounts owed Purdy and Purdy's breach of contract relieved the company of complying with section 626 are unavailing. The Legislature indicated no intent to relieve an employer of its statutory obligations when the computations prove difficult. Similarly, the Legislature indicated no intent to relieve an employer of its obligations on an alleged breach of the employment contract. The employer's obligation is to pay the compensation owed within the time specified by the statute. We agree that the effect of this statute is harsh, perhaps more so than the Legislature intended. Nonetheless, we cannot ignore the statute's plain language and its broadly protective purpose, which covers the kind of conduct engaged in by CTC. CTC withheld the undisputed portion of Purdy's compensation while demanding a release from Purdy of all claims against the company. This is precisely the kind of behavior the Legislature intended to prevent.

## II. *Purdy's entitlement to the amounts claimed*

### A. *Vacation or unpaid leave?*

■ The trial court concluded as a matter of fact that the period during which Purdy did not work was an unauthorized leave of absence. Thus the court rejected Purdy's attempt to characterize the period as a vacation. The court did not find credible the evidence Purdy proffered that he had an informal agreement with CTC that he would continue to accrue commissions during this absence. Instead, the court found CTC's witnesses credible.

Moreover, the agreement between Purdy and CTC specifically binds Purdy to "normal

payrolls are kept and wages are paid, provided that any overcompensation may be withheld if authorized under section 635 and any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by the employee. Whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment has the same status as wages earned.

For purposes of this section, the term "employee" means any person who performs services for another in return for compensation, but does not include an independent contractor.

For purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made.

In any action for unpaid wages brought under this subchapter, the employer may not deduct as a setoff or counterclaim any money allegedly due the employer as compensation for damages caused to the employer's property by the employee, or any money allegedly owed to the employer by the employee, notwithstanding any procedural rules regarding counteractions, provided that any overcompensa-

tion may be withheld if authorized under section 635 and any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by the employee, and that nothing in this section may be construed to limit or restrict in any way any rights that the employer has to recover, by a separate legal action, any money owed the employer by the employee.

An action for unpaid wages under this section may be brought by the affected employee or employees or by the Department of Labor on behalf of the employee or employees. An employer found in violation of this section is liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee or employees must include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

The Legislature amended the statute in 1991 to define "employees" and to provide that an employer may not deduct as a setoff or counterclaim moneys claimed for damages or owing to the employer unless authorized under 26 M.R.S.A. § 635. The instant case requires us to apply the statute as it stood prior to this amendment.

Company policies." One of those policies is an unpaid leave policy that requires in part that the employee submit a written request. It is undisputed that Purdy did not comply with this policy. We will not disturb the court's factual finding that Purdy's absence was an unpaid leave and, therefore, that Purdy was not entitled to commissions accruing during this period. *See Sabattus School Comm. v. Dept. of Educ.,* 644 A.2d 1380, 1382 (Me.1994) ("[A] factual finding will be set aside as clearly erroneous only if there is no competent evidence in the record to support it.").

The finding that Purdy's absence was an unpaid leave relieved the trial court, and now relieves us, of the need to reach the question of whether Purdy was the procuring cause of the sales at issue. The procuring cause inquiry is meant to "protect a salesperson who is discharged prior to the culmination of a sale, but after he or she has done everything that is necessary to effect the sale." *Furth v. Inc. Publishing Corp.,* 823 F.2d 1178, 1180 (7th Cir.1987). It is not meant to protect employees who are deemed not to have worked during the period those commissions were accruing. Neither party claimed, and the court did not determine, that Purdy's six-month absence amounted to a resignation or termination.

### B. *Commissions accrued between Purdy's return and termination*

The trial court determined that CTC effectively terminated its agreement with Purdy when it informed him, on November 13, 1990, that it was reassigning the State of Maine account to make it a house account. This reassignment meant that Purdy would no longer receive commissions from related sales. The agreement allowed CTC to terminate Purdy without cause but required CTC to provide him with two weeks notice. The court concluded that CTC owed Purdy commissions on the State account from the date of his return to work (November 1, 1990) through November 29, 1990 (two weeks following CTC's notice of termination to Purdy).

The agreement provides that alterations may be made only by "further written agreement between the parties." Absent evidence of any written agreement between the parties, and given that CTC did pay Purdy commissions on other contracts for the period from November 14 to December 31, 1990, CTC was obligated to pay commission on sales to the State and was required to abide by section 626 with respect to all commissions that accrued between the date Purdy returned and the date his employment with CTC terminated, December 31, 1990.

### III. *Summary*

It is factually undisputed that CTC did not pay the compensation owed within two weeks of Purdy's demands. Therefore, by virtue of section 626, Purdy is entitled to a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney fees with respect to the $33,321.25 claimed in Count I of his complaint. By virtue of his contract with CTC, Purdy is also entitled to the commissions on orders (including orders from the State of Maine) received from the date he returned to work for CTC until the date his resignation became effective, with section 626 interest, penalties, and attorney fees with respect to those commissions.

The entry is:

Judgment affirmed in part and vacated in part. Remanded for further proceedings consistent with the opinion herein.

WATHEN, C.J., DANA, and LIPEZ, JJ., concurring.

ROBERTS, Justice, with whom GLASSMAN and CLIFFORD, JJ., join, dissenting.

I respectfully dissent. The trial court found that section 626 was not applicable because, *inter alia,* the undisputed testimony established that the computation of Purdy's commissions for each calendar year was complicated and usually took several months of joint effort to accomplish. Purdy's response to CTC's offer concerning the 1990 commissions was simply a demand for payment in full of an unspecified amount rather than a submission of his own calculations. Given

the customary conduct of these parties with regard to Purdy's commissions, I agree with the trial court's refusal to apply section 626. The literal application of section 626 in these circumstances leads to the absurd conclusion that CTC must perform the usually complicated task in two weeks or risk liability for triple the amount due plus attorney fees. I would affirm the judgment of the Superior Court.