1998 ME 234

**Elieca TAYLOR et al.**

v.

**Richard KENNEDY, Personal Representative of the Estate of Clarence Kennedy.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 14, 1998.

Decided Oct. 28, 1998.

G. Charles Shumway, II, Portland, ME, for plaintiffs.

Stephen J. Sucy, Yarmouth, ME, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER and CALKINS, JJ.

CALKINS, Justice.

[¶ 1] Richard Kennedy, the personal representative of the estate of Clarence Kennedy, appeals from a judgment entered after a non-jury trial in the Superior Court (York County, *Cole, J.*) in favor of plaintiffs Elieca Taylor, Debra Dupuis, Geneva Kief, Lillian Manuel, and Gail Nowak. The judgment awarded the five plaintiffs damages and attorney fees on their claims for unpaid wages pursuant to 26 M.R.S.A. § 626 (Supp.1997). On appeal, Kennedy argues, *inter alia*, that the trial court erred in finding that the plaintiffs were employees and that they made a demand for payment as required by section 626. The plaintiffs cross-appeal, contending that the court should have assessed additional damages and attorney fees. Because we agree with the plaintiffs that they were entitled to treble damages for all weeks that they were not paid their wages, we vacate and remand.

[¶ 2] In 1992, Clarence and Lillian Kennedy gave their only son, Richard Kennedy, their power of attorney, and he handled their financial affairs. Clarence and Lillian were elderly and suffering from a variety of ailments. In October 1994, Richard hired Taylor to provide home care for his parents. Taylor initially worked seven hours a day, doing various household chores, such as preparing meals, laundry, shopping, cleaning, and generally assisting Clarence and Lillian. In December, 1994, Richard authorized Taylor to work twelve hours per day. Richard originally paid Taylor on an hourly basis, but as of January 1, 1995, he started paying her

a weekly salary, and she agreed to be responsible for her own taxes.

[¶ 3] By late 1994, the health of Clarence and Lillian had deteriorated so substantially that they needed round the clock care. Richard authorized Taylor to hire additional caregivers. In January, 1995, Taylor hired Kief and Dupuis. Richard became dissatisfied with Taylor and, during a telephone call, suggested that he was going to terminate her services. In the meantime, an attorney employed by Legal Services for the Elderly visited Clarence, who requested that the power of attorney to Richard be revoked. The attorney prepared a revocation which Clarence signed on February 3, 1995.

[¶ 4] Lillian died on February 11, 1995. Clarence refused to see Richard and instructed the police to keep Richard out of the house.

[¶ 5] When Richard was informed of the revocation of the power of attorney he stopped making payments to Taylor and the other caregivers. Clarence's attorney filed a petition to have the Department of Human Services (DHS) appointed as temporary conservator. The appointment was approved by the Probate Court on February 23, 1995. However, Richard refused to turn over Clarence's assets to DHS.

[¶ 6] Through February and March 1995, Taylor, Kief, and Dupuis continued to care for Clarence. Although they were not being paid, they stayed on because Clarence asked them to and because he told them to "put it on the tab," meaning that they would be paid once Clarence's assets were recovered from Richard. Taylor hired an additional caregiver, Manuel, for weekends, and Taylor also hired Nowak, a licensed practical nurse, to give prescribed injections to Clarence. DHS was able to pay four of the caregivers $200 each from a social security check that arrived for Clarence. In early April, Taylor injured her back and was not able to continue giving care. There was no money available to hire additional caregivers because Richard still refused to turn over his father's assets to DHS. Clarence entered a nursing home on April 5, 1995. He died on June 19, 1995. The caregivers were not paid for any services they provided between January 29, 1995 and April 5, 1995, except for the $200 that DHS paid to Taylor, Kief, Dupuis and Manuel.

## I. Richard Kennedy's Appeal

[¶ 7] Section 626 of title 26 provides in relevant part:

An employee leaving employment must be paid in full within a reasonable time after demand. . . .

For purposes of this section, the term "employee" means any person who performs services for another in exchange for compensation, but does not include an independent contractor.

For purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made. . . .

An employer found in violation of this section is liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employees must include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

[¶ 8] The trial court expressly found that Taylor and the other caregivers were employees and not independent contractors. The factors that are to be applied to determine whether a worker is an employee or an independent contractor are set forth in *Murray's Case,* 130 Me. 181, 186, 154 A. 352, 354 (1931):

(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

The most important factor is the right to control. *See id.* at 185, 154 A. at 354; *see also Marston v. Newavom,* 629 A.2d 587, 591 (Me.1993) (applying right to control test to section 626 employment status determination).

[¶ 9] The trial court applied those factors, and the record supports its finding that Taylor and the other caregivers were employees. They were employed on an hourly basis for specific periods of time, with the exception of Taylor whose pay was changed by Richard from hourly to a weekly salary. As Clarence's agent, Richard had the power to discharge the caregivers, until his power of attorney was revoked, and he exercised control over them, particularly Taylor. Before and after the power of attorney was revoked Clarence himself had the power to discharge and control the plaintiffs. It is also apparent that Taylor was authorized to hire Nowak and Manuel. We cannot say that the trial court's conclusion that Richard and Clarence had the right to control the caregivers was clearly erroneous.

[¶ 10] The trial court also found that all five caregivers made a demand for wages as required by section 626. The record shows that they made a demand for payment to DHS whose agent said they would be paid as soon as Richard turned over Clarence's money. Their attorney sent a demand letter to Richard at a point in time when Richard held Clarence's assets. On several occasions Taylor discussed with Clarence the fact that the caregivers were not being paid, and Clarence said they would be paid as soon as he got the money from Richard. The trial court was not clearly erroneous in concluding that the plaintiffs satisfied the statutory demand requirement.

[¶ 11] Richard's remaining arguments on appeal are without merit.

## II. The Plaintiffs' Cross–Appeal

[¶ 12] The trial court held that, for the time period from February 23, 1995, when DHS was appointed public conservator, to April 5, 1995, when Clarence went in the

nursing home, the caregivers were not entitled to the treble damages mandated by 26 M.R.S.A. § 626. The trial court determined that the unpaid wages for that period were recoverable only in quantum meruit. Apparently the court construed the public conservatorship as limiting the ability of Clarence to exercise control over the caregivers and therefore to be their employer for purposes of section 626. Nothing in the Probate Code, however, states that a person under a conservatorship cannot be an employer. Indeed, the Code suggests the opposite. See 18–A M.R.S.A. § 5–408(5) (1998) ("An order ... determining that a basis for the appointment of a conservator ... exists, has no effect on the capacity of the protected person."); *Id.* § 5–420, Unif. Prob.Code comment ("Unlike a situation involving appointment of a guardian, the appointment of a conservator has no bearing on the capacity of the disabled person to contract or engage in other transactions.")

[¶ 13] The appointment of DHS as Clarence's public conservator did not change the fact that he had the right to control the plaintiffs. If they were his employees before February 23, 1995, as the trial court found with ample support in the record, then they were his employees after that date as well. They were entitled to be paid on time and, because they were not, they are entitled to the remedies mandated by the Legislature in section 626.[1]

[¶ 14] The trial court did not articulate its reasons for reducing the attorney fees requested by the plaintiffs by one-fourth. It is possible that the court made that reduction because of its erroneous conclusion that section 626 remedies are not applicable for the entire period in question. If the reduction was for this reason, on remand the court should re-examine reasonable attorney fees.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

1. In recalculating the plaintiffs' damages on remand, the trial court should address Taylor's contention, which has some support in the record, that she worked nine weeks and four days without pay rather than the nine weeks found by the court.