STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
KENNEBEC, ss.                                     DOCKET NO. CV-03-304

                                                  D!'T/- KS'V- +

RYAN MADORE

         Plaintiff

    v.                                            **DECISION AND ORDER**

KENNEBEC HEIGHTS
COUNTRY CLUB,

         Defendant

         This matter is before the court on defendant Kennebec Heights Country Club's motion for summary judgment. The plaintiff, in his complaint, alleges a personal services contract with the defendant entered into on March 24, 2003, as a golf professional. Plaintiff alleges that he agreed to accept an annual salary of $27,000 for the golf season beginning April 1, 2003, to the close of the golf season, October 31, 2003. In his complaint, he says the terms of the agreement were to be paid at $27,000 over a 52-week period, to receive health insurance and to be entitled to 80% of all golf instruction lesson fees paid. Plaintiff further complains that on October 14, 2003, the defendant eliminated his position and served him with a termination notice. Other than a two-week severance, no further payments under the contract were made to the plaintiff.

         Plaintiff seeks relief for breach of contract, unfair employment practice for not paying all wages due him under the contract, unjust enrichment/*quantum meruit* for services rendered where he has not been paid, fraud and punitive damages.

         It is agreed by the parties that on or about March 24, 2003, defendant, through its agent, delivered to plaintiff a letter formally extending an offer of employment which

letter was signed by the plaintiff and to which he agreed. The letter indicates that plaintiff was to start work as the club's golf professional on April 1, 2003, and further that the initial compensation package will be, "an annual base salary of $27,000 to be paid on a weekly basis throughout the year;".

Defendant agrees that employment discussions took place between the president and general manager of the defendant corporation and the plaintiff and that on March 24, 2003, that agent extended an offer of employment. Defendant asserts the terms of the offer are governed by the letter in question and that the letter does not specify terms of employment for one year or any other period of time. Defendant states in support of this motion that the plaintiff failed to meet the defendant's expectations for performance and that, following an office meeting, plaintiff was terminated from employment. Defendant asserts that it gave the plaintiff two additional weeks compensation for the periods ending October 21 and October 28, 2003.

Plaintiff essentially agrees with the fundamental assertions by the defendant but qualifies the characterization of events by indicating that discussions with the agent for the defendant corporation as well as customer usage of the trade caused him to consider the contract to incorporate the concept that he would work during the golf season, would be free to find other employment during the winter but would be paid his annual salary over the 52 weeks of the year.[1] In its reply statement of material facts, the defendant denies that its agent made any representations to plaintiff relative to anything other than working the full year and that circumstances related to the employment situation of previous golf professionals with the defendant are irrelevant

---

[1] The purpose of responding to a statement of material facts by using the term "qualified" is to assert facts modifying the opposing party's statement. It is not a vehicle for argument as to evidence or law or quality of the opposing party's position.

and cannot be incorporated into a contract created by a letter which integrates all the terms of the agreement.[2]

Under legal standards acceptable to be beyond argument, and therefore without citation, the court must first look at the language of the only document provided to support a contract. The court first notes that the performance is to start April 1, 2003, which is fully understood to be the beginning of the golf season. The second note is that the plaintiff was charged with concentrating his focus on improved customer service and a creative marketing program. Next, it notes the use of the term "your initial compensation package" and finally the language most particularly in issue: "an annual base salary of $27,000 to be paid on a weekly basis throughout the year."

On its face, the language appears to be unambiguous and that is clearly the defendant's position. However, given that this was an agreement without a period of time as to the term of the contract and taking judicial notice of the fact that golf is a seasonal activity in the State of Maine, the court must ask, why is the compensation package phrased in the manner appearing in the letter? If the plaintiff is to be considered an employee-at-will, why does the contract not contain a weekly or monthly salary? If it was clearly anticipated that the plaintiff was expected to perform services for the defendant during the entire 52 weeks of the year, why does the contract say that he is to be paid "on a weekly basis throughout the year?" Why even phrase the language in an annual salary and require it to be paid throughout the year if not to otherwise qualify the terms of the employment period? Other professions require employment activity during a portion of the calendar year but the employee is paid over the period of the year, such as school teachers, and the like. Phrasing the

---

[2] Defendant's reply statement of material facts contains objections. There is no authority for objections in a statement of material facts and they should not be contained therein. No consideration will be given to the objections.

compensation package as it is in this contract suggests to the court that there is another meaning to the use of the words that may be consistent with the plaintiff's position.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. The party opposing summary judgment will be given the benefit of any reasonable inferences that can be drawn from the presented facts. *See Perkins v. Blake*, 2004 ME 86, ¶ 7, 853 A.2d 752, 755. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial". *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a *prima facie* case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

Adding to the suggestion of ambiguity in the language, there clearly is a disagreement in fact between the parties as to their understanding at the time the transaction was entered into and the expectations of the parties relative to plaintiff's performance. Under those circumstances, this court as a matter of law is unable to grant summary judgment on count I of the complaint.

Title 26 M.R.S.A. § 626 entitled "Cessation of Employment" states:

> Any employee leaving employment shall be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid, provided that any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by the employee.

Under the letter contract, there were no unpaid wages in this case up to the time of the termination.

Defendant argues that plaintiff's contract had no period of time and therefore plaintiff was an employee-at-will. Plaintiff argues that even breach of a contract may cause the provisions of Title 26 M.R.S.A. § 626 to be a means of relief. In support of that position he cites *Purdy v. Community Telecommunications Corp.*, 663 A.2d 25 (Me. 1995). That is a contract case and the court allowed plaintiff to proceed under the statutory provision. However, in that case, at the time of the termination, by contract, the defendant owed the plaintiff commissions. In order for the court to remove this claim from the case, it would have to find, as a matter of fact, that the provisions of the agreement providing an annual salary to be paid over a period of one year was not designed to give an annual salary payable over 12 months for seven months work. If a factfinder concludes that that was the case, in October the plaintiff had performed his expected duties under the contract and was entitled to be paid for the rest of the year.[3]

---

[3] The defendant complains in his statement of material facts that plaintiff was terminated by defendant for not performing his duties. This flies in the face of the letter of termination given the plaintiff by the

The claims of unjust enrichment or *quantum meruit* also rise or fall on the expectations of the parties. If the plaintiff provided all of the services called for in the contract as of the end of October, the equitable claims would be viable. Again, this is a matter of fact.

The fraud claim requires proof by clear and convincing evidence that the plaintiff established that defendant made a false representation of a material fact with knowledge of its falsity or in reckless disregard of whether it was true or false for purposes of inducing another to act or to refrain from acting in reliance upon it and the plaintiff justifiably relied upon the representation as true and acts upon it to his damage. *Letellier v. Small*, 400 A.2d 371 (Me. 1979). If the defendant's agent entered into the agreement with an anticipation that the plaintiff would perform for the full year at the full year salary, there is no falsity or reckless disregard in any representation made. Further, plaintiff has not presented any facts to suggest that there has been any fraud or any inducement to enter into the contract and clearly the facts presented by the plaintiff do not rise to the level of being clear and convincing evidence of a fraudulent action.

Because this matter is presented to the court clearly as a breach of contract action, punitive damages are not available for breach of contract. *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772 (Me. 1989) and the court has found no tort claim which would rise to the level of damage to the plaintiff anticipated in punitive damages including a showing of malice, either express or implied. *Tuttle v. Raymond*, 494 A.2d 1353 (Me. 1985).

---

defendant in which he was advised he was to be laid off because of inability by the defendant financially to meet his salary. That, too, raises a suggestion that the plaintiff was entitled to further compensation.

For all the reasons stated herein, the entry will be:

Defendant's motion for summary judgment on Count I, II and III of plaintiff's complaint is DENIED; defendant's motion for summary judgment on counts IV and V of plaintiff's complaint is GRANTED; judgment for defendant on counts IV and V of plaintiff's complaint.

Dated: August 29, 2005

Donald H. Marden
Justice, Superior Court

RYAN MADORE  - PLAINTIFF
4 SHELDON ST. APT. 6
FARMINGDALE ME 04344
Attorney for: RYAN MADORE
SEAN FARRIS  - RETAINED 12/09/2003
FARRIS HESELTON LADD & BOBROWIECKI, PA
251 WATER STREET
PO BOX 120
GARDINER ME 04345-0120


vs
KENNEBEC HEIGHT COUNTRY CLUB - DEFENDANT
RFD 2 BOX6910
WINTHROP ME 04364
Attorney for: KENNEBEC HEIGHT COUNTRY CLUB
WALTER MCKEE  - RETAINED
LIPMAN & KATZ & MCKEE, PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

**DOCKET RECORD**


Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 12/09/2003

# Docket Events:

12/09/2003 FILING DOCUMENT - COMPLAINT FILED ON 12/09/2003
           Plaintiff's Attorney:  SEAN FARRIS
           WITH ATTACHED EXHIBITS, FILED.


12/09/2003 Party(s):  RYAN MADORE
           ATTORNEY - RETAINED ENTERED ON 12/09/2003
           Plaintiff's Attorney: SEAN FARRIS


12/09/2003 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 12/09/2003
           ISSUED TO S. FARRIS, ESQ.


12/19/2003 Party(s):  KENNEBEC HEIGHT COUNTRY CLUB
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 12/10/2003
           ORIGINAL SUMMONS WITH RETURN SERVICE MADE UPON KENNEBEC HEIGHTS COUNTRY CLUB.


12/30/2003 Party(s):  KENNEBEC HEIGHT COUNTRY CLUB
           RESPONSIVE PLEADING - ANSWER FILED ON 12/30/2003
           Defendant's Attorney: WALTER MCKEE


12/30/2003 Party(s):  KENNEBEC HEIGHT COUNTRY CLUB
           ATTORNEY - RETAINED ENTERED ON 12/30/2003
           Defendant's Attorney: WALTER MCKEE


12/30/2003 ORDER - SCHEDULING ORDER ENTERED ON 12/20/2003
           DONALD H MARDEN , JUSTICE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL


12/30/2003 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 08/30/2004