**Michael DINAN, Plaintiff,**

**v.**

**ALPHA NETWORKS INC., Defendant.**

**No. 2:10–cv–00340–JAW.**

United States District Court, D. Maine.

April 23, 2012.

Patrick S. Bedard, Beard and Bobrow, PC, Eliot, ME, for Plaintiff.

Daniel P. Schwarz, Debra Weiss Ford, Kevin Joshua Scott, Jackson Lewis LLP, Portsmouth, NH, Yung–Ming Chou, Law Office of Yung–Ming Chou, Fremont, CA, for Defendant.

**ORDER ON PLAINTIFF MICHAEL DINAN'S MOTION THAT THE COURT TREBLE THE DAMAGES AND ADD COSTS, INTEREST AND ATTORNEY'S FEES TO THE JUDGMENT IN ACCORDANCE WITH 26 M.R.S.A. [§ ] 626, OR IN THE ALTERNATIVE CERTIFY THIS ISSUE TO THE MAINE SUPREME JUDICIAL COURT IN ACCORDANCE WITH 4 M.R.S.A. [§ ] 57**

JOHN A. WOODCOCK, JR., Chief Judge.

The Court concludes that it is unclear whether Maine's Timely and Full Payment of Wages Law, 26 M.R.S. § 626, applies to the reasonable value of an employee's services under quantum meruit. Pursuant to 4 M.R.S. § 57, the Court therefore certifies this question to the Maine Supreme Judicial Court.

## I. STATEMENT OF FACTS

### A. Procedural History

On July 21, 2011, a federal jury issued a verdict in favor of Michael Dinan against his former employer Alpha Networks, Inc. (Alpha). *Jury Verdict* (Docket # 97). The jury rejected Mr. Dinan's claim that Alpha entered into an employment agreement with him in which it promised to pay him commissions for 2009 and 2010. *Id.* It found, however, that Mr. Dinan and Alpha entered into a valid Separation Agreement & General Release and that Alpha repudiated or breached that Agreement. *Id.* The jury found that Mr. Dinan established that he is entitled to damages under quasi-

contract. *Id.* It awarded Mr. Dinan $70,331.93 as the reasonable value of the services Mr. Dinan is entitled to receive from Alpha under quasi-contract. *Id.* In response to a special interrogatory, the jury fixed the value of thirty days wages, including commissions, for Michael Dinan at $7,799.67. *Id.*

On September 1, 2011, Mr. Dinan moved for an order seeking to establish that Maine's wage payment statute, 26 M.R.S. § 626, should apply to the jury verdict and that he is entitled to treble damages and attorney's fees under that statute. *Pl.'s Michael Dinan's Mot. that the Ct. Treble the Damages and Add Costs, Interest and Att'y's Fees to the J. in Accordance with 26 M.R.S.A. [§ ] 626, or in the Alternative Certify this Issue to the Me. Supreme Judicial Ct. in Accordance with 4 M.R.S.A. [§ ] 57* (Docket # 106) (*Pl.'s Mot.*). On September 21, 2011, Alpha objected. *Alpha Networks' Obj. to Pl.'s Mot. that the Ct. Apply Me. Law or Certify the Issue to the Me. Supreme Judicial Ct.* (Docket # 108) (*Def.'s Opp'n*). On September 29, 2011, Mr. Dinan replied. *Michael Dinan's Reply Br. to Alpha Networks' Objection to Pl.'s Mot. that the Ct. Apply Me. Law or Certify the Issue to the Me. Supreme Judicial Ct.* (Docket # 109) (*Pl.'s Reply*).

### B. Factual Background [1]

#### 1. Michael Dinan's Employment With Alpha

Mr. Dinan worked as a salesman for Alpha from November 10, 2005 through March 12, 2010. When he first became employed, he signed an employment agreement dated November 10, 2005. *Pl.'s Ex. 1.* It is this agreement that contained the California choice of law provision. *Id.* ¶ 9. The November 10, 2005

agreement also contained a provision on incentive pay based on a somewhat complicated formula and Alpha maintained this same incentive compensation plan through 2007. *Id.* ¶ 2. In 2008, Alpha initiated a new bonus plan, which resulted in a much lower incentive payment to Mr. Dinan. These lower bonuses caused discontent among the salespeople, including Mr. Dinan.

In 2009, Alpha promised to adopt an incentive plan and based on this promise, Mr. Dinan continued to work as a salesman for Alpha and to generate substantial sales for Alpha. Despite periodic assurances that Alpha would adopt an incentive plan for 2009 and 2010, Alpha simply failed to adopt an incentive plan. In December 2009, Alpha paid Mr. Dinan $4,000 as a gift in recognition of the fact that it had failed to adopt an incentive compensation plan.

Before he left, Mr. Dinan signed a Separation Agreement and General Release, requiring Alpha to pay him $26,666.67, which melted to $14,007.97 when reduced by federal and state taxes and FICA. Mr. Dinan formally resigned on March 3, 2010. On March 12, 2010, Alpha issued three checks to Mr. Dinan: two totaling $14,007.97 and a third in the amount of $5,434.71. The third check was for all wages, commissions, overtime, bonus, and accrued unused vacation or paid time-off that he had earned during his employment with Alpha. On March 12, 2010, after the checks were issued, Alpha discovered that it had failed to deduct the $4,000 December payment, which it considered an advance, not a gift. Alpha emailed Mr. Dinan that same day and told him not to deposit the checks. It attached to the email an amendment to the Separation Agreement and General Release that reduced the gross payment of $26,667.67 by $4,000. On March 15, 2010, Alpha sent

---

1. The Court relates the facts in a manner consistent with the jury verdict.

Mr. Dinan another email and attached for his signature a more formal First Amendment to the Separation Agreement and General Release, which similarly reduced his payout by $4,000. Alpha placed a stop payment on the two checks totaling $14,007.97.

Mr. Dinan refused to sign the First Amendment and demanded that Alpha inform him when it would pay him the commissions it owed. He followed up with an April 4, 2010 email again demanding payment and informing Alpha that it was "illegal to withhold payment for any commissions after an employee ends employment." On April 14, 2010, Mr. Dinan emailed Alpha that "[b]ecause the commission calculations are so complex," he was "unable to calculate what the 2009 commissions should be"; nevertheless, he noted that the data for the calculations "is available from Alpha." Mr. Dinan repeatedly inquired about the status of Alpha's payment.

On May 5, 2010, Alpha's attorney sent Mr. Dinan a letter demanding that he sign the revised Separation Agreement and that he provide certain customer information; the Alpha lawyer threatened suit for damages to Alpha and promised to pay the agreed-upon severance allowance "in due course" after Alpha received the demanded documents. Finally, on June 10, 2010, Mr. Dinan's attorney sent a letter to Alpha citing 26 M.R.S. § 626 and demanding payment of his commissions within fourteen days.

### 2. Michael Dinan's Complaint

On July 10, 2010, Mr. Dinan filed a complaint in the Maine Superior Court against Alpha; the Complaint contained four counts: (1) an alleged violation of 26 M.R.S. § 626, Maine's Timely and Full Payment of Wages Law; (2) breach of contract; (3) breach of quasi-contract; and (4) unjust enrichment. *Notice of Removal,* Attach 1 *Compl.* (Docket # 1). Alpha counterclaimed, asserting that Mr. Dinan had breached the Separation Agreement. *Def.'s Ans., Affirmative Defenses and Countercl.* (Docket # 9).

### 3. The Verdict

On July 21, 2011, the third day of trial, the jury issued a verdict. *Verdict Form* (Docket # 97). The jury found that Mr. Dinan had failed to establish that Alpha had breached its employment agreement, that Alpha had established that Mr. Dinan and it had entered into a valid Separation Agreement, that Mr. Dinan had established that Alpha had repudiated or breached the Separation Agreement, that Mr. Dinan had established he was entitled to damages under quasi-contract in the amount of $70,331.93, that Mr. Dinan had established that Alpha had failed to pay him wages, including his commissions, and that the value of thirty days wages including commissions equaled $7,799.67. *Id.*

## II. THE PARTIES' POSITIONS

### A. Michael Dinan's Position

In his post-verdict motion, Mr. Dinan raises four issues: (1) whether the Maine or California unpaid wage statute applies to the verdict; (2) whether recovery under a quantum meruit theory constitutes wages under the Maine unpaid wages statute; (3) whether double damages under the Maine statute are a penalty or liquidated damages; and (4) whether the Court should certify this question to the Maine Supreme Judicial Court pursuant to 4 M.R.S. § 57. *Pl.'s Mot.* at 3–14.

### B. Alpha's Position

Alpha responds that California law applies; however, its primary contention is that the late wage payment statutes, whether in California or Maine, do not apply to a quantum meruit award and that

the Maine statute does not apply to cases where there is a bona fide dispute. *Def.'s Opp'n* at 2.

## III. DISCUSSION

### A. Choice of Law

■ The parties seek a definitive ruling as to whether California or Maine law applies to this case; Mr. Dinan contends that Maine law controls and Alpha says California law does. The Court declines to enter the fray. The first step in a choice-of-law analysis is to "determine whether there is a conflict between the substantive laws of the interested jurisdictions." *Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29 (1st Cir.1997). There is no conflict "when the resolution of a choice-of-law determination would not alter the disposition of a legal question." *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir.2005) (citing *Royal Bus. Group, Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir.1991) (noting that choice of law is "unnecessary" where the "result will not vary")). In such a case, "a reviewing court need not decide which body of law controls." *Okmyansky*, 415 F.3d at 158.

To evaluate whether Maine and California law conflict, the Court must ascertain the substantive provisions of law for each jurisdiction. Here, the Court concludes that whether Maine would apply 26 M.R.S. § 626 to an award of quantum meruit damages is unclear. Accordingly, the Court will await clarification from the Maine Supreme Judicial Court before determining the choice of law issue in this case.

### B. Maine Law

Section 626 of title 26 of the Maine Revised Statutes provides in part:

An employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid, provided that any overcompensation may be withheld if authorized under section 635 and any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by the employee. Whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment has the same status as wages earned.

. . .

For purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made.

26 M.R.S. § 626. There is a related penalty provision at 26 M.R.S. § 626–A, which establishes, in part:

Remedies for unpaid wages do not become available to the employee except as follows. If the wages are clearly due without a bona fide dispute, remedies are available to the employee 8 days after the due date for payment. If there is a bona fide dispute at the time payment is due, remedies become available to the employee 8 days after demand when the wages are, in fact, due and remain unpaid.

26 M.R.S. § 626–A.

■ To fit within the protection of the statute, the amounts the employer owes must be "wages earned."[2] *See St. Hilaire v. Indus. Roofing Co.*, 346 F.Supp.2d 212,

**2.** By its terms, the statute also applies to vacation pay but Mr. Dinan concedes he was properly paid his vacation time and similar accrued benefits in the third check totaling

$5,434.71. The Court focuses on whether the jury awarded "wages" in its quantum meruit award.

215, 341 F.Supp.2d 28, 31 (D.Me.2004) (declining to approve an attachment on the unpaid wage portion of an employee's claim because the contested payments may have been part of a stock sale). For section 626 to apply to Mr. Dinan's quantum meruit jury award, "wages earned" must be broad enough to capture "the reasonable value of services provided." There is no statutory definition of "wage" or "wages earned." A common definition of "wage" does not clarify the answer; Black's Law Dictionary defines "wage" as:

> Payment for labor or services, usu. based on time worked or quantity produced; specif., compensation of an employee based on time worked or output of production.

*Black's Law Dictionary* 1716 (9th ed. 2009). From the Court's perspective, the dictionary definition does not answer whether a quantum meruit award of the reasonable value of service would constitute a wage under section 626.

█ If a statute is ambiguous, "the statute's history, underlying policy, and other extrinsic factors" generally favor the employee's view. *Burke v. Port Resort Realty Corp.*, 1999 ME 138, ¶¶ 8–9, 737 A.2d 1055, 1059. In refusing to hold the employee to an "error-free demand for payment," the *Burke* Court described section 626 as having a "protective purpose." 1999 ME 138, ¶ 9, 737 A.2d at 1059. It wrote that section 626 provides "a broad guarantee of prompt payment of wages to all employees on termination." *Id.* (quoting *Community Telecomms. Corp. v. Loughran*, 651 A.2d 373, 376 (Me.1994)). Indeed, even though the Law Court has acknowledged that "the effect of this statute is harsh," it has consistently rejected employer claims that a good faith exception should be read into the law. *Bisbing v. Me. Med. Ctr.*, 2003 ME 49, ¶ 6, 820 A.2d

582, 584; *see also Purdy v. Cmty. Telecomms. Corp.*, 663 A.2d 25, 28 (Me.1995).

While the Maine Supreme Judicial Court has not directly addressed whether section 626 encompasses employee-based quantum meruit claims, it has dropped a hint. In *Taylor v. Kennedy*, 719 A.2d 525 (Me.1998), the Maine Law Court addressed a claim that unpaid caregivers were not entitled to treble damages under 26 M.R.S. § 626 for a portion of their employment because a conservator had been appointed for their former employer. *Taylor*, 719 A.2d at 528. The trial court had ruled that because the conservator was not authorized to exercise control over the caregivers, the conservator was not their employer and therefore the caregivers were entitled only to quantum meruit damages during the latter part of their employment. *Id.* The trial court had further ruled that for this interval, because their claim for unpaid services were recoverable under quantum meruit, the caregivers were not entitled to treble damages for unpaid wages under 26 M.R.S. § 626. *Taylor*, 719 A.2d at 528. The Maine Supreme Judicial Court concluded that, contrary to the trial court's ruling, the conservator had the right to control the caregivers on behalf of the employer and that the caregivers had a right to be paid under 26 M.R.S. § 626. *Taylor*, 719 A.2d at 528.

The *Taylor* opinion may be significant for what the Court did not do. If the trial court was wrong in saying that 26 M.R.S. § 626 did not apply to quantum meruit damages, the Maine Law Court could have decided the case on the ground that even if the trial court was right about the conservatorship, the caretakers would still have been entitled to recovery under 26 M.R.S. § 626. Nevertheless, the Court is chary about reading too much into *Taylor*. Although the *Taylor* opinion may provide

oblique support for Alpha's contention that 26 M.R.S. § 626 does not apply to quantum meruit awards, the Law Court selection of one and not another ground for decision is a slim reed upon which to predict its view of this question.

■ "To sustain a claim in quantum meruit, a plaintiff must establish that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 15, 776 A.2d 1229, 1235 (quoting *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 11, 760 A.2d 1041, 1045); *see also Uncle Henry's Inc. v. Plaut Consulting Co., Inc.*, 399 F.3d 33, 45–46 (1st Cir. 2005). Unlike a "wages earned" claim under 26 M.R.S. § 626, "the measure of recovery in quantum meruit cases is the reasonable value of the services provided." *Jenkins*, 2001 ME 98, ¶ 17, 776 A.2d at 1235 (quoting *Paffhausen v. Balano*, 1999 ME 169, ¶ 9, 740 A.2d 981, 983). Thus, "damages are not measured by the benefit realized and retained by the defendant, but rather are based on the value of the services provided by the plaintiff." *Paffhausen v. Balano*, 1998 ME 47, ¶ 7, 708 A.2d 269, 271. Because it is the "reasonable value of the services" and, as the Law Court has said, "[r]easonableness" is not the same as "mathematical certainty," *Jenkins*, 2001 ME 98, ¶ 18, 776 A.2d at 1235–36, a quantum meruit claim does not naturally fit into Maine's Timely and Full Payment of Wages Law, where the statute seems to implicitly contemplate that the employer is able to calculate and pay earned wages in short order, *see* 26 M.R.S. § 626 ("An employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid . . . .").

Yet, the Maine Law Court has made it clear that the employee does not have to be entirely accurate when he makes a demand for payment. *See Burke v. Port Resort Realty Corp.*, 1999 ME 138, ¶ 9, 737 A.2d 1055, 1059 ("[i]t would be inconsistent with the language and the protective purpose of section 626 to hold that an employer is excused from its requirements when an employee does not make an error-free demand for payment"). The Law Court has stated that "[t]he Legislature indicated no intent to relieve an employer of its statutory obligations when the computations prove difficult." *Purdy*, 663 A.2d at 28. As earlier noted, the Law Court recognizes that "the effect of this statute is harsh" because there is no good faith exemption under Maine law for an employer's delayed payment, even if the amounts are difficult to compute. *Bisbing*, 2003 ME 49, ¶ 6, 820 A.2d at 584–85 (citing *Burke*, 1999 ME 138, ¶ 16, 737 A.2d at 1060).

Some Law Court decisions suggest that the wages under 26 M.R.S. § 626 must be under an employment contract. For example, the *Richardson* Court rejected a claim by a retired employee that the school department violated 26 M.R.S. § 626 by failing to promptly pay the full amount of his accrued vacation time, when his employment contract limited paid vacation time to thirty days. *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 11, 983 A.2d 400, 403. The Law Court noted that "[a]lthough section 626 creates a statutory right for former employees to *seek* payment, *entitlement* to payment is governed solely by the terms of the employment agreement." *Id.* 2009 ME 109, ¶ 7, 983 A.2d at 402 (emphasis in original); *see also Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 9, 770 A.2d 97, 101 ("[t]he employ-

ment agreement, not section 626, governs how wages are earned and, if specified, when wages are to be paid"); *Burke,* 1999 ME 138, ¶ 11, 737 A.2d at 1059 (when an employee demands payment, the employer is on notice that he "wanted to be paid his *contractual* commissions and vacation time") (emphasis supplied). Here, by contrast, Mr. Dinan's successful quantum meruit cause of action was not pursuant to his employment agreement with Dinan.

Case law from other jurisdictions is not helpful here because the language of state wage statutes varies. Mr. Dinan relies heavily on *Smith v. Lamb–Weston, Inc.,* No. 91–35837, 1992 WL 354565, 1992 U.S.App. LEXIS 32287 (9th Cir. Nov. 27, 1992), as support for the proposition that quantum merit damages are wages. However, in *Smith,* the Ninth Circuit interpreted a state of Washington statute that defined "wages" broadly as "compensation due to an employee by reason of employment." *Id.* at *2, 1992 U.S.App. LEXIS 32287 at *4 (citing Wash. Rev. Code § 49.46.010(2)). The Ninth Circuit concluded that "[t]he governing Washington law construes 'wages' to include situations in which an award is made, not only for wages in the ordinary sense of the word, but also for 'moneys due by reason of employment.'" *Id.* at *2, 1992 U.S.App. LEXIS 32287 at *4 (quoting *Hayes v. Trulock,* 51 Wash.App. 795, 755 P.2d 830, 836 (1988)). Similarly, in *Tracy v. Tracy,* 7 Neb.App. 143, 581 N.W.2d 96 (Neb.Ct.App. 1998), the conclusion that "wages" encompassed a quantum meruit award was based on a Nebraska statute that provides that the amount of wages is "determined on a time, task, fee, commission, or other basis." *Id.* at 152, 581 N.W.2d 96 (citing Neb.Rev.Stat. § 48–1229(4)). The *Tracy* Court emphasized the "or other basis" language in concluding that a quantum meruit award constituted "wages" under Nebraska law. *Id.*

## C. Certification Under 4 M.R.S. § 57

 Section 57 of title 4 of the Maine Revised Statutes provides, in part:

> When it appears to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there is involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as the Law Court may, by written opinion, answer.

4 M.R.S. § 57. "Consideration of the merits of certified questions is not automatic." *Brown v. Crown Equip. Corp.,* 2008 ME 186, ¶ 12, 960 A.2d 1188, 1192. The Law Court, at its discretion, exercises jurisdiction over a question where "(1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case." *Darney v. Dragon Prods. Co., LLC,* 2010 ME 39, ¶ 10, 994 A.2d 804, 806 (quoting *Brown,* 2008 ME 186, ¶ 12, 960 A.2d at 1192).

 Here, there are no issues of material fact in dispute. *See Brown,* 2008 ME 186, ¶ 13, 960 A.2d at 1192 ("[b]ecause the United States District Court held a trial, and a jury rendered its verdict in this case, there are no issues of material fact in dispute"). If the Law Court rules that an award of quantum meruit damages does not apply to 26 M.R.S. § 626, Mr. Dinan's claim under that statute will be resolved; if the Law Court rules that an award of

quantum meruit damages does apply to the case, Mr. Dinan's claim under the statute will be confirmed as valid.

The question is whether there is "no clear controlling precedent." *Darney*, 2010 ME 39, ¶ 10, 994 A.2d at 806. The Court could "make an informed prophecy—to discern the rule the state's highest court would be most likely to follow," *Janney Montgomery Scott LLC v. Tobin*, 571 F.3d 162, 164 (1st Cir.2009) (internal punctuation omitted), but, "[f]ortunately, Maine law provides an alternative to the hazards of 'informed prophecy': certification," *Darney v. Dragon Prods. Co., LLC*, 640 F.Supp.2d 117, 125 (D.Me.2009). Because this case contains each of the three requisites for certification, the Court concludes that certification would be the better course than hazarding a guess as to what the Maine Supreme Judicial Court would do.

The Court therefore certifies the following question to the Maine Supreme Judicial Court sitting as the Law Court:

Does Maine's Timely and Full Payment of Wages Law, 26 M.R.S. § 626, apply to the reasonable value of an employee's services under quantum meruit?

## IV. CONCLUSION

The Court GRANTS Plaintiff Michael Dinan's Motion that the Court Treble the Damages and Add Costs, Interest and Attorney's Fees to the Judgment in Accordance with 26 M.R.S.A. [§ ] 626, or in the Alternative Certify this Issue to the Maine Supreme Judicial Court in Accordance with 4 M.R.S.A. [§ ] 57 (Docket # 106), but only insofar as he has requested certification to the Maine Supreme Judicial Court. The Court DISMISSES WITHOUT PREJUDICE the Motion to the extent it seeks other relief.

## CERTIFICATE OF QUESTIONS OF STATE LAW TO THE SUPREME JUDICIAL COURT OF MAINE SITTING AS THE LAW COURT

The United States District Court for the District of Maine finds that this case involves a question of law of the state of Maine that may be determinative of the cause and that there are no clear controlling precedents thereon in the decisions of the Maine Supreme Judicial Court sitting as the Law Court. The Court's Order on Plaintiff's Michael Dinan's Motion That the Court Treble the Damages and Add Costs, Interest and Attorney's Fees to the Judgment in Accordance with 26 M.R.S.A. [§ ] 626, or in the Alternative Certify this Issue to the Maine Supreme Judicial Court in Accordance with 4 M.R.S.A. [§ ] 57 (Docket # 110) provides the relevant procedural and factual background and describes the question of law, regarding the applicability of 26 M.R.S. § 626 to an award of quantum meruit damages to an employee.

Accordingly, this Court hereby CERTIFIES this question to the Maine Supreme Judicial Court sitting as the Law Court and respectfully requests the Law Court to provide instructions concerning such questions of state law pursuant to 4 M.R.S. § 57 and Rule 25 of the Maine Rules of Appellate Procedure. In accordance with Maine Rule of Appellate Procedure 25(b), the Court respectfully suggests that the Plaintiff be treated as the appellant before the Maine Supreme Judicial Court sitting as the Law Court.

The Clerk is hereby DIRECTED to cause twelve (12) copies of this Order to be certified, under official seal, to the Maine Supreme Judicial Court sitting as the Law Court. It is FURTHER ORDERED that the Clerk of this Court be, and is hereby, authorized and directed to provide, without any cost, to the Law Court, upon written request of the Chief Justice or the Clerk

thereof, copies of any and all filings of the parties herein and of the docket sheets pertaining to this case.

SO ORDERED.